Opinion by Judge GRABER; Partial Concurrence and Partial Dissent by Judge IKUTA; Dissent by Judge PREGERSON.
OPINION
GRABER, Circuit Judge:
Petitioner Flavio Nunez-Reyes, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals’ (“BIA”) decision denying his application for cancellation of removal. We deny the petition. In the course of doing so, sitting as an en banc court, we overrule our equal protection holding in Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir.2000). We also conclude that, in light of the equities and other considerations, we will apply today’s new rule only prospectively.*
FACTUAL AND PROCEDURAL HISTORY
Petitioner entered the United States in 1992. In 2001, he was charged in state court with one felony count of possession of methamphetamine, in violation of California Health and Safety Code section 11377(a), and one misdemeanor count of being under the influence of methamphetamine, in violation of California Health and Safety Code section 11550(a). He pleaded guilty to both counts, but the state court eventually dismissed the charges under California Penal Code section 1210.1(e)(1), held unconstitutional in other part by Gardner v. Schwarzenegger, 178 Cal.App.4th 1366, 101 Cal.Rptr.3d 229 (2009). Under that provision, the state court “shall ... set aside [the conviction] and ... dismiss the indictment” if the defendant successfully completes a drug treatment program and meets other conditions. CaLPenal Code § 1210.1(e)(1). “[E]xcept as provided [in other subsections], both the arrest and the conviction shall be deemed never to have occurred.” Id.
In early 2002, the federal government issued a notice to appear, charging Petitioner with being removable. Petitioner conceded removability but applied for adjustment of status and cancellation of removal. The immigration judge (“IJ”) denied all forms of relief and ordered Petitioner removed. The IJ held that the state convictions rendered Petitioner ineligible for any form of relief even though the state court later had dismissed the convictions. The BIA affirmed the Id’s decision.
Petitioner timely petitioned for review. A three-judge panel granted the petition because of our rule, first announced in *688 Lujan-Armendariz, that “equal protection requires us to treat the expungement of a state conviction for simple possession in the same manner” as the expungement of a federal conviction for simple possession. Nunez-Reyes v. Holder, 602 F.3d 1102, 1104 (9th Cir.2010) (per curiam). Judge Graber wrote separately to state reasons why we should revisit the rule announced in Lujan-Armendariz. See id. at 1105 (Graber, J., concurring) (citing Rice v. Holder, 597 F.3d 952, 957-58 (9th Cir. 2010) (Ikuta, J., concurring) (arguing that we should revisit this rule); Ramirez-Altamirano v. Holder, 563 F.3d 800, 816-17 (9th Cir.2009) (Ikuta, J., dissenting) (same); Dillingham v. INS, 267 F.3d 996, 1012-13 (9th Cir.2001) (Fernandez, J., dissenting) (suggesting that the Lujan-Armendariz rule is incorrect but concluding that, “for purposes of this case, that is neither here nor there”)).
We then granted rehearing en banc. Nunez-Reyes v. Holder, 631 F.3d 1295 (9th Cir.2010) (order).
STANDARD OF REVIEW
We review de novo the BIA’s determination “that a controlled substance conviction precludes immigration relief as a matter of law.” Ramirez-Altamirano, 563 F.3d at 804.
DISCUSSION
A. We overrule Lujan-Armendariz.
Does a state-court conviction for a simple-possession drug crime, later expunged by the state court, nevertheless constitute a “conviction” for federal immigration purposes? History has provided an ever-changing answer to that question. See In re O-T- 4 I. & N. Dec. 265, 268 (B.I.A.1951) (“yes”); In re A-F-, 8 I. & N. Dec. 429, 445 (Att’y Gen.1959) (“no”); In re Werk, 16 I. & N. Dec. 234, 235-36 (B.I.A.1977) (“yes, in some circumstances”); Garberding v. INS, 30 F.3d 1187, 1190-91 (9th Cir.1994) (“no”); In re Manrique, 21 I. & N. Dec. 58, 62-64 (B.I.A.1995) (“no”). Against that backdrop, in 1996, Congress enacted significant changes to our immigration laws, which included a new definition of the term “conviction.” 8 U.S.C. § 1101(a)(48)(A).[1]
In Lujan-Armendariz, we addressed the effect of the new definition on a petitioner’s expunged state conviction for a simple-possession drug crime. We began by considering whether a federal conviction, later expunged under the Federal First Offender Act (“FFOA”), nevertheless constitutes a “conviction” for immigration purposes. Importantly, the FFOA mandates that a successfully expunged federal conviction “shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose.” 18 U.S.C. § 3607(b) (emphases added). We thoroughly examined the apparent conflict between the quoted text of the FFOA and the new definition of “conviction.” Lujan-Armendariz, 222 F.3d at 734-43.
But we relegated to a footnote a very important additional step in the analysis: Did Congress have a rational basis for distinguishing between expunged federal *689 convictions and expunged state convictions? We answered as follows: “INS counsel offered no reason, and we cannot conceive of any, why Congress would have wanted aliens found guilty of federal drug crimes to be treated more leniently than aliens found guilty of state drug crimes.” Id. at 743 n. 24. Our brief analysis of this important issue is understandable in light of the government’s silence. But we now are persuaded that we erred.[2]
Since our decision in Lujan-Armendariz, the BIA and every sister circuit to have addressed the issue — eight in total — have rejected our holding. In re Salazar-Regino, 23 I. & N. Dec. 223, 235 (B.I.A.2002) (en banc); Wellington v. Holder, 623 F.3d 115, 120-21 (2d Cir.2010) (per curiam), cert. denied, — U.S. —, 131 S.Ct. 2960, 180 L.Ed.2d 245, 79 U.S.L.W. 3442 (U.S. June 6, 2011) (No. 10-933); Danso v. Gonzales, 489 F.3d 709, 716 (5th Cir.2007); Ramos v. Gonzales, 414 F.3d 800, 805-06 (7th Cir.2005); Resendiz-Alcaraz v. U.S. Att’y Gen., 383 F.3d 1262, 1271-72 (11th Cir.2004); Elkins v. Comfort, 392 F.3d 1159, 1163-64 (10th Cir.2004); Acosta v. Ashcroft, 341 F.3d 218, 224-27 (3d Cir.2003); Vasquez-Velezmoro v. INS, 281 F.3d 693, 697-98 (8th Cir.2002); Herrera-Inirio v. INS, 208 F.3d 299, 304-09 (1st Cir.2000). The BIA held:
After considering the analysis set forth in Lujam-Armendariz ..., we decline to apply the ruling in that decision to cases arising outside of the jurisdiction of the Ninth Circuit. We therefore conclude that, except in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under [the immigration laws].
In re Salazar-Regino, 23 I. & N. Dec. at 235.
Having reconsidered the issue, we now agree with the BIA and our sister circuits. A very relaxed form of rational basis review applies to this inquiry: “[F]ederal classifications based on alienage are subject to relaxed scrutiny. Federal classifications distinguishing among groups of aliens thus are valid unless wholly irrational.” Garberding, 30 F.3d at 1190 (citation and internal quotation marks omitted); see also Abebe v. Mukasey, 554 F.3d 1203, 1206 (9th Cir.2009) (en banc) (per curiam) (“Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens.”), cert. denied, — U.S. —, 130 S.Ct. 3272, 176 L.Ed.2d 1182 (2010). That standard easily is met here. The Third Circuit put it well:
Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is consid *690 ered a conviction under state law. Particularly in view of Congress’s power in immigration matters, it seems plain that rational-basis review is satisfied here.
Acosta, 341 F.3d at 227. Another rational basis exists as well:
Not all states permit expungement. A person convicted in such a state would be ineligible for relief under the immigration laws, whereas a person convicted in a different state would be eligible. Congress reasonably could have concluded that, in the strong interest of uniformity, it would not recognize any state expungements rather than adopt a piecemeal approach.
Nunez-Reyes, 602 F.3d at 1107 (Graber, J., concurring).
In conclusion, we hold that the constitutional guarantee of equal protection does not require treating, for immigration purposes, an expunged state conviction of a drug crime the same as a federal drug conviction that has been expunged under the FFOA. We therefore overrule Lujan-Armendariz’s holding to the contrary. By necessity, we also overrule the same holding in those cases that, bound by stare decisis, followed the rule we announced in Lujan-Armendariz. Those cases include Romero v. Holder, 568 F.3d 1054 (9th Cir.2009); Ramirez-Altamirano, 563 F.3d 800; Dillingham, 267 F.3d 996; and Cardenas-Uriarte v. INS, 227 F.3d 1132 (9th Cir.2000).[3]
B. We will apply our decision prospectively only.
Having decided to overrule Lujan-Armendariz, we next consider whether to apply the new rule of law only prospectively. The default principle is that a court’s decisions apply retroactively to all cases still pending before the courts. Federal courts may depart from that default principle only in certain circumstances, as outlined in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Below, we first explain that the three-factor Chevron Oil test remains good law, at least in cases, such as this one, where we announce a new rule of law not affecting our jurisdiction. Balancing the three factors described in Chevron Oil, we conclude that we will apply our decision only prospectively.
1. The Chevron Oil test applies.
The circumstances that justify a deviation from the normal rule of retroactivity have a long jurisprudential history. In the criminal context, the Supreme Court originally held that prospective application was appropriate in some circumstances. Link-letter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). But the Court later overruled Linkletter in favor of a bright-line rule: In criminal cases, any new rule of law must be applied retroactively. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
In the civil context, the Supreme Court originally announced a three-factor test of general applicability in Chevron Oil. Under the Chevron Oil test, equitable considerations in some circumstances warrant prospective application of a new rule of law. But the Court has limited, in two relevant ways, the circumstances in which the Chevron Oil test applies.
First, a court announcing a new rule of law must decide between pure prospectivity and full retroactivity; what Justice Souter termed “selective prospectivity,” in which courts weighed the equities on a case-by-case basis, is foreclosed. *691 James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 537-38, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Souter, J., plurality op.); see Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995); Harper v. Va. Dep’t of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (“When[the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review....”); Crowe v. Bolduc, 365 F.3d 86, 93 (1st Cir.2004) (“In a civil case, then, a court [announcing a new rule of law] has only two available options: pure prospectivity or full retroactivity”).
Second, in cases in which the new rule of law strips the courts of jurisdiction, the courts must apply that new rule of law retroactively. See United States ex rel. Haight v. Catholic Healthcare W., 602 F.3d 949, 953 (9th Cir.) (citing United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009); Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007)), cert. denied, - U.S. -, 131 S.Ct. 366, 178 L.Ed.2d 150 (2010); Felzen v. Andreas, 134 F.3d 873, 877 (7th Cir.1998) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). “Equitable considerations are altogether irrelevant when a court lacks adjudicatory power.” Felzen, 134 F.3d at 877.
We glean from this jurisprudential history the following rule of law: We apply the three-pronged test outlined in Chevron Oil (1) in a civil case; (2) when we announce a new rule of law, as distinct from applying a new rule that we or the Supreme Court previously announced; (3) and when the new rule does not concern our jurisdiction. See, e.g., George v. Camacho, 119 F.3d 1393, 1399 n. 9 (9th Cir.1997) (en banc).[4]
Like some of our sister circuits, we acknowledge that the Supreme Court’s reasoning in cases such as Harper could support a conclusion that the Chevron Oil test no longer applies in any circumstances: all new rules of law must be applied retroactively. See, e.g., Kolkevich v. Att’y Gen. of U.S., 501 F.3d 323, 337 n. 9 (3d Cir.2007) (observing that, “as some commentators have noted, it is unclear whether we have the power” to apply a new rule of law prospectively in light of Harper, but not reaching the issue); Fair-fax Covenant Church v. Fairfax Cnty. Sch. Bd., 17 F.3d 703, 710 (4th Cir.1994) (noting that, in Harper, “the Supreme Court cast serious doubt” upon the continuing “vitality” of the Chevron Oil test). But the Supreme Court has not overruled the Chevron Oil test in the circumstances described above. See Glazner v. Glazner, 347 F.3d 1212, 1216-17 (11th Cir.2003) (en banc) (“Although prospectivity appears to have fallen into disfavor with the Supreme Court [citing Harper, James B. Beam, and Griffith], the Court has clearly retained the possibility of pure prospectivity and, we believe, has also retained the Chevron Oil test, albeit in a modified form, as the governing analysis for such determinations in civil cases.”); Fairfax Covenant Church, 17 F.3d at 710 (“We are struck, however, by the notable absence in Harper of any statement that Chevron [Oil] is overruled .... ”); but see Hulin v. Fibreboard Corp., 178 F.3d 316, 333 (5th Cir.1999) (concluding, in dictum, that “[t]he Court’s most recent decisions ... leav[e] only an *692 indistinct possibility of the application of pure prospectivity in an extremely unusual and unforeseeable case”). As a circuit court, even if “recent Supreme Court jurisprudence has perhaps called into question the continuing viability of [its precedent], we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.” United States v. Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir.2005) (citation omitted); see Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”). We therefore remain bound by Chevron Oil. For that same reason, every court to have decided the issue has concluded that Chevron Oil continues to apply. See Crowe, 365 F.3d at 94 (applying the Chevron Oil test); Glazner, 347 F.3d at 1219 (same); see also Shah v. Pan Am. World Servs., Inc., 148 F.3d 84, 91 (2d Cir.1998) (same). Following our sister circuits and our previous holdings, we too will apply the Chevron Oil test when all three of the requirements described above are met.
In this civil case, we announce a new rule of law that does not concern our jurisdiction. The Chevron Oil test applies.
2. Balancing the Chevron Oil factors, we will apply the new rule only prospectively.
The three Chevron Oil factors are: (1) whether the decision “establish[es] a new principle of law”; (2) “whether retrospective operation will further or retard [the rule’s] operation” in light of its history, purpose, and effect; and (3) whether our decision “could produce substantial inequitable results if applied retroactively.” 404 U.S. at 106-07, 92 S.Ct. 349 (internal quotation marks omitted). There is no question that our decision today “establish[es] a new principle of law ... by overruling clear past precedent on which litigants may have relied.” Id. at 106, 92 S.Ct. 349. Lujan-Armendariz clearly announced the rule that equal protection required that we treat expunged state drug convictions as we do expunged federal drug convictions. Just as clearly, we overrule that holding today.
Further, amici assert — and the government does not dispute — that, because of the clarity and consistent application of Lujavr-Armendariz for more than a decade, aliens and their counsel have acted in reliance on Lujan-Armendariz. According to amici, aliens often have pleaded guilty to minor drug crimes and have completed drug treatment in order to have their convictions expunged — all in reliance on Lujan-Armendariz’s promise that doing so would spare them from adverse immigration consequences.
“There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.” INS v. St. Cyr, 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).[5] “[D]eportation is an integral part — indeed, sometimes the most *693 important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.” Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473, 1480, 176 L.Ed.2d 284 (2010) (footnote omitted). “Preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence.” Id. at 1483 (internal quotation marks and alteration omitted). Accordingly, “the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty.” Id. at 1486.
Our decision in Lujan-Armendariz provided clear assurance that expungement after a plea of guilty to the state crime of simple drug possession would insulate the alien from adverse immigration consequences. “Even if the defendant were not initially aware of [Lujan-Armendariz ], competent defense counsel, following the advice of numerous practice guides, would have advised him concerning the [decision’s] importance.” St. Cyr., 533 U.S. at 323 n. 50, 121 S.Ct. 2271. Indeed, in a situation similar to this one, where the immigration consequences are “succinct, clear, and explicit,” the Supreme Court has held that an alien’s counsel who fails to inform the alien of those consequences has provided ineffective assistance. Padilla, 130 S.Ct. at 1483.
After our decision today, alien defendants will know that an expunged state-law conviction for simple possession mil have adverse immigration consequences.[6] Those aliens will be able to make a fully informed decision whether to plead guilty or to exercise their constitutional rights, such as the right to trial by jury. See St. Cyr, 533 U.S. at 322, 121 S.Ct. 2271 (“In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits.... ”).
For those aliens who relied on Lujan-Armendariz, however, “[t]he potential for unfairness in the retroactive application” of today’s decision “is significant and manifest.” St. Cyr, 533 U.S. at 323, 121 S.Ct. 2271. Those aliens were assured that, after completion of drug treatment, there *694 would be absolutely no legal consequences. Their waiver of their constitutional rights was in reliance on Luyan-Armendariz. In these circumstances, we easily conclude that the third Chevron Oil factor is met: our decision “could produce substantial inequitable results if applied retroactively.” Chevron Oil, 404 U.S. at 107, 92 S.Ct. 349. It would be manifestly unfair effectively to hoodwink aliens into waiving their constitutional rights on the promise of no legal consequences and, then, to hold retroactively that their convictions actually carried with them the “particularly severe ‘penalty ” of removal, Padilla, 130 S.Ct. at 1481; cf. Crowe, 365 F.3d at 94 (“We think that it would be patently unfair to subject a party to a forfeiture for assiduously following binding circuit precedent.”); Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 545 (11th Cir.2002) (en banc) (“It would be inequitable to punish those parties for following the clearly established precedent of this Circuit.”).
For similar reasons, we conclude that the second Chevron Oil factor is met: In light of the rule’s history, purpose, and effect, retroactive application will not further the rule’s operation. 404 U.S. at 106—07, 92 S.Ct. 349. As we now make clear, Congress intended that convictions for state-law simple possession have adverse immigration consequences. At first glance, it may appear that retroactive application of today’s decision would further that purpose. After all, the state-law convictions occurred, and Congress intended that such convictions have adverse immigration consequences.
But Congress did not intend adverse immigration consequences for those who were merely charged with a crime or suspected of a crime; Congress intended such results only for those who were duly convicted, with all the constitutional protections of our criminal justice system. Relevant here, we think it is a reasonable assumption that Congress intended adverse immigration consequences only for those who were convicted either after the exercise of their constitutional rights, such as the right to trial, or after an informed waiver of those constitutional rights. As discussed above, many alien defendants fell into neither category. Instead, they pleaded guilty and waived their constitutional rights with a wholly uninformed understanding of the consequences of their plea. Contrary to their understanding that there would be no immigration consequences, the actual consequence is the severe penalty of removal. Nothing in the statute or its history, purpose, or effect suggests that Congress intended adverse immigration consequences for those whose waiver of constitutional rights turned out to be so ill-informed. Indeed, the Supreme Court has instructed that such a gross misunderstanding of the immigration consequences of a plea, when caused by incompetent counsel, rises to the level of a constitutional violation. Padilla, 130 S.Ct. at 1486-87. We conclude that retroactive application of our decision today will not further the purposes of the immigration laws.
Weighing the Chevron Oil factors, we hold that our decision today will apply only prospectively. Cf. Glazner, 347 F.3d at 1220 (“If this were truly a situation where the class of persons affected by the new rule would suddenly face a strong likelihood of liability when they faced no possibility of liability before, we would be inclined to view the equities as weighing heavily in favor of pure prospective application.”). For those aliens convicted before the publication date of this decision, Lujaur-Armendariz applies. For those aliens convicted after the publication date of this decision, Lujan-Armendariz is overruled.
*695 C. We nevertheless deny the petition in this case.
Because our decision applies only prospectively, we apply the rule announced in Lujan-Armendariz to the petition for review in this case. In Lujan-Armendariz, we held that an expunged conviction for simple possession did not constitute a “conviction” for immigration purposes. In later cases, we held that an expunged conviction for a “lesser offense” to simple possession also did not constitute a “conviction” for immigration purposes. Ramirez-Altamirano, 563 F.3d at 808-09; Cardenas-Uriarte, 227 F.3d at 1137. In those cases, it was clear that the conviction was for a “lesser offense” because the alien was convicted of a single crime that carried a lesser penalty than the crime of simple possession. See Ramirez-Altamirano, 563 F.3d at 808 (“The structure of [the alien’s] plea agreement obviously was intended to minimize his culpability by allowing him to avoid facing the more serious drug possession charge, and reflects the state’s view as to the seriousness of the offense.”).
Here, however, Petitioner was convicted of being under the influence of methamphetamine. Being under the influence is not a lesser crime than simple possession. Although we have held that possession of paraphernalia is a lesser crime than possession of a drug itself, at least where the defendant pleaded down from an original charge of simple possession, Cardenas-Uriarte, 227 F.3d at 1137, being under the influence is not a possession crime at all, and it is thus qualitatively different from any federal conviction for which FFOA treatment would be available. Being under the influence is not a lesser offense to simple possession because it arguably is more serious than mere possession; being under the influence alters one’s sober state of mind and carries an immediate risk of dangerous behavior, which mere possession does not necessarily create. For example, one could foolishly agree to hide drugs for a friend, which does not create an immediate risk of dangerous behavior. We therefore overrule Rice v. Holder, 597 F.3d 952 (9th Cir.2010).[7] The BIA did not err.
Petition DENIED.

 Chief Judge Kozinski and Judges Schroeder, Thomas, Wardlaw, and M. Smith join all Parts of this Opinion. Judges O’Scannlain, Callahan, and Ikuta join Part A only. Judge B. Fletcher joins Part B only.

. The full definition states:
The term “conviction” means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.
8 U.S.C. § 1101(a)(48)(A).

. We address here only our holding in Lujan-Armendariz that the constitutional guarantee of equal protection required Congress to treat expunged federal convictions and expunged state convictions the same way. As we did in Lujan-Armendariz, we assume, without deciding, that the statutory term “conviction” includes expunged state convictions. Because this case does not require resolution of that issue, we do not reach it.

. We do not address, and do not overrule, any other holding of Lujan-Armendariz or its progeny, other than Rice v. Holder, 597 F.3d 952 (9th Cir.2010). See infra Part C.

. To the extent that our decision in George contravenes today’s holding by applying Chevron Oil to circumstances concerning our jurisdiction, we recognize that subsequent Supreme Court decisions overruled it. Haight, 602 F.3d at 953; Felzen, 134 F.3d at 877.

. Judge Ikuta asserts that, because St. Cyr arose in a different context, all the Supreme Court’s statements in that opinion are "inapposite” here. Partial dissent at 702 n. 7. As an initial matter, we quote from a wide range of cases arising in many different contexts. For instance, in the next sentence in text, we quote from Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), but Judge Ikuta expresses no concern about that quotation. More to the point, we simply use the Supreme Court’s words to describe the *693 interplay between plea agreements and immigration consequences and the resulting unfairness to aliens when they enter into plea agreements under a misunderstanding of the immigration consequences. The interplay between pleas and consequences — and the resulting unfairness — are the same, whether it is Congress or the courts that pull the rug out from underneath aliens. While St. Cyr does not control the analysis of the third Chevron Oil factor, the Court's discussion is relevant and instructive.

. We recognize, of course, that nothing is ever guaranteed. There was always some chance, for instance, that Congress would amend the law and apply it ■ retroactively. Similarly, there was some chance that an alien residing in the Ninth Circuit would move and be issued a notice to appear in a different jurisdiction, where Lujan-Armendariz does not apply. At oral argument, the government urged us to conclude that any reliance on Lujan-Armendariz therefore was only speculative. We disagree; indeed, it is the government’s argument that contains speculation. Reliance on the clear, binding precedent of Lujan-Armendariz strikes us as entirely reasonable and prudent, particularly in light of Congress' inaction, the Supreme Court's steady denial of certiorari in cases raising this issue, and our own consistent application (and, arguably, expansion) of the precedent in a series of cases spanning more than a decade. Moreover, the Supreme Court has rejected essentially the same argument because "[tjhere is a clear difference, for the purposes of [statutory] retroactivity analysis, between facing possible deportation and facing certain deportation.” St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271. In conclusion, aliens’ reliance on Lujan-Armendariz is not diminished because of some outside chance that they would not receive its benefit.

. Judge Ikuta argues that, if we are correct about the Chevron Oil factors concerning Lujan-Armendariz, then we also must overrule Rice prospectively only. Partial dissent at 701 & n.6. We disagree. Unlike with respect to Lujan-Armendariz, the Chevron Oil factors do not support a finding of prospectivity with respect to Rice. The parties and amici have presented no evidence that litigants have relied on our very recent decision in Rice. See Chevron Oil, 404 U.S. at 106, 92 S.Ct. 349 (holding that prospectivity is appropriate where we overrule past precedent “on which litigants may have relied”). This petitioner certainly did not rely on Rice, because he pleaded guilty in 2001 — nine years before we decided Rice. For similar reasons, we are unpersuaded that "substantial inequitable results,” id. at 107, 92 S.Ct. 349 (internal quotation marks omitted), will result from retroactive application of our decision to overrule the very recent holding in Rice.