**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE DANIEL LEMUS,
*Petitioner*,

v.

LORETTA E. LYNCH, Attorney General,
*Respondent.*

No. 12-73654

Agency No.
099-711-900

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 21, 2015
Pasadena, California

Filed November 16, 2016

Before: Johnnie B. Rawlinson and Jacqueline H. Nguyen,
Circuit Judges, and Michael A. Ponsor,* Senior District
Judge.

Opinion by Judge Ponsor

---

* The Honorable Michael A. Ponsor, Senior District Judge for the
U.S. District Court for Massachusetts, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Jose Daniel Lemus's petition for review from the Board of Immigration Appeals' decision retroactively applying to him the holding in *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2012), that an applicant for cancellation of removal must satisfy the years-of-residence requirement on his own, without relying on a parent's residential history.

Petitioner contended that *Martinez Gutierrez* announced a new rule of law and that, under *Chevron Oil Co. v. Huson*, 4040 U.S. 97 (1971), its holding should not be applied retroactively to him. The panel held that because it was deferring to the BIA's decision in *Matter of Escobar*, 24 I. & N. Dec. 231 (BIA 2007), as directed by the Supreme Court, rather than adopting a new rule on its own, the retroactivity analysis set forth in *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322 (9th Cir. 1982), applied rather than that of *Chevron Oil*. The panel held that the second *Montgomery Ward* factor, which favors retroactivity if a party could reasonably anticipate the change in law, and the third factor, which examines the extent of reliance upon the former rule, weighed heavily against Lemus. The panel further found that the fifth factor favored the government's strong interest in uniform application of the immigration statutes.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Florence Weinberg (argued) and Andrew K. Nietor, San Diego, California, for Petitioner.

Carmel A. Morgan (argued) and Gray J. Newkirk, Trial Attorneys; Luis E. Perez, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, Washington, D.C.; for Respondent.

## OPINION

PONSOR, Senior District Judge:

In *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2012), the Supreme Court unanimously held that the Board of Immigration Appeals ("BIA") permissibly construed section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a), when it concluded that an alien seeking cancellation of removal had to satisfy the years-of-residence requirement on his own, without relying on a parent's residential history. *Id.* at 2014–15. Petitioner Lemus contends that *Martinez Gutierrez* announced a new rule of law and that, under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), its holding should not be applied retroactively to him.

We disagree. Lemus's citation of *Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011) (en banc), in support of his argument for prospective application of *Martinez Gutierrez* is not persuasive. In *Nunez-Reyes*, we applied *Chevron Oil's* retroactivity analysis, because we ourselves were explicitly adopting a new rule, setting aside our own longstanding circuit precedent. *Id.* at 692. Where, as here, we are adopting

no new rule on our own, but merely (at the direction of the Supreme Court) deferring to the BIA, *Chevron Oil's* retroactivity criteria are inapplicable.

*Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), offers a more compelling precedent on the issue of retroactivity. In that case, we did not announce a new rule on our own authority, as in *Nunez-Reyes*, but rather deferred to a rule previously announced by the BIA, as *Martinez Gutierrez* has instructed us to do here. *Garfias-Rodriguez* held that in this situation the proper approach to the issue of retroactivity is set forth in *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322 (9th Cir. 1982). 702 F.3d at 520. Applying *Montgomery Ward*, we hold that *Martinez Gutierrez* should be applied retroactively. Based on this, we will deny the petition.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Jose Daniel Lemus is a Guatemalan citizen who entered the United States as a four-year-old in 1993 with his mother. In 2006, after Lemus turned eighteen, he became a legal permanent resident through his stepfather. On April 3, 2011, Lemus was crossing by car from Mexico to Calexico, California when a routine sweep uncovered nearly fifty pounds of marijuana in his vehicle's rear panels. Lemus was initially charged with importation of marijuana and held in custody. On June 7, 2011, he pleaded guilty to one count of making a materially false statement to a federal officer in violation of 18 U.S.C. § 1001. On July 1, 2011, he was sentenced to time served. Four days later, he was transferred into the custody of the Department of Homeland Security and was thereafter placed into removal proceedings, charged with

being inadmissible as an alien who was or had been a trafficker in illicit controlled substances.

In proceedings before the IJ, Lemus admitted that he was involved in drug trafficking and was to be paid $3,000 for his thwarted attempt to bring marijuana into the United States. Nevertheless, he sought relief through an application for cancellation of removal, a course available to certain permanent residents. Section 240(A)(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a), authorizes the Attorney General to cancel the removal of a person who: "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony."

The government argued that Lemus was not eligible for this relief because he had not fulfilled the seven-year continuous residency requirement. Lemus acknowledged that he could not independently satisfy this requirement, since he had only been a legal resident for approximately five years when he pleaded guilty to the false statement charge.[1] He argued, however, that by imputing his stepfather's years of residency to himself, he could satisfy the requisite number of years needed to qualify.

At the time of the proceeding before the IJ, this imputation was permitted—in the teeth of the BIA's vigorous

---

[1] The stop-time rule provides that an alien's period of continuous residence is deemed to end when he is served with a notice to appear or is convicted of certain criminal offenses, including a controlled substance violation. 8 U.S.C. § 1229b(d)(1).

disagreement—under the authority then prevailing in the Ninth Circuit. *See Mercado-Zazueta v. Holder*, 580 F.3d 1102 (9th Cir. 2009); *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir. 2005). A dispute nevertheless arose at the hearing before the IJ, not about the principle of imputing a parent's residential history, but about whether Lemus's stepfather had actually acquired enough countable years to allow Lemus to satisfy the residency requirement. The IJ's inquiry therefore necessarily focused on when the stepfather had actually been admitted for purposes of this calculation.

Lemus argued before the IJ that his stepfather was admitted as part of the family unity program, which would have meant that, under Ninth Circuit authority, Lemus could count his stepfather's years in presenting his case for cancellation. The government disagreed, contending that the stepfather's admission was based on a deferred action decision, which would have precluded Lemus from imputing his stepfather's residential history. In order to clarify the historical picture, Lemus's lawyer asked the IJ to order the government to produce the stepfather's Alien Registration File ("A-File").[2] The IJ continued the case in the hope that the government would locate and turn over the A-File, but the government ultimately failed to do this.

At the final hearing before the IJ, on April 17, 2012, the principal issue was the date upon which Lemus's stepfather was admitted. The IJ sided with the government and found Lemus ineligible for cancellation of removal. The IJ also

---

[2] The A-File "contains the official record material about each individual for whom DHS has created a record." *U.S. v. Lopez*, 762 F.3d 852, 856 n.1 (9th Cir. 2014) (quoting 76 Fed. Reg. 34233, 34236 (June 13, 2011)).

held that he had no authority to require the Department of Homeland Security to produce the stepfather's A-File, and he ordered Lemus removed.

Lemus appealed the IJ's ruling to the BIA where, again, the central issue initially was whether Lemus could take advantage of his stepfather's residential history to satisfy the eligibility requirements for his application for cancellation of removal. Lemus conceded, as he did before the IJ, that he could not independently meet the seven-year residency requirement.

While the BIA appeal was pending, the Supreme Court issued its decision in *Holder v. Martinez Gutierrez*. In its unanimous decision, the Supreme Court reversed the line of Ninth Circuit decisions that allowed imputation of a parent's years of residency under 8 U.S.C. § 1229b(a), instead holding that the BIA's contrary construction of the statute, as set forth in *Matter of Escobar*, 24 I. & N. Dec. at 235, was reasonable and therefore entitled to deference. *Martinez Gutierrez*, 132 S. Ct. at 2021. In *Escobar*, the BIA had interpreted the statute as requiring that an alien satisfy the years of residency requirement independently, without imputing a parent's residence period. 24 I. & N. Dec. at 234–35.

Lemus argued to the BIA, as he does here, that *Martinez Gutierrez* should not apply retroactively to him in light of the contrary Ninth Circuit precedent controlling on June 7, 2011, when he pleaded guilty to making a materially false statement. Lemus contended that he would have proceeded differently in his criminal case if he had known that his plea would render him ineligible for cancellation of removal. Lemus further argued before the BIA that, since (in his view) *Martinez Gutierrez* should not apply retroactively, his

stepfather's residency ought to be imputed to him and that, if there was any uncertainty regarding his stepfather's residency, the government should be required to produce his stepfather's A-File to clear up the confusion.

The BIA concluded that *Martinez Gutierrez* foreclosed any argument for imputation, rejecting Lemus's contention that it should not be applied retroactively. The BIA reasoned that because retroactivity is the default rule, and none of the limited circumstances justifying departure from that rule was present in Lemus's case, Lemus could not avoid retroactive application of *Martinez Gutierrez*. The BIA therefore affirmed the IJ's denial of relief. The BIA also ruled that, without the right to impute his stepfather's residency, Lemus could not claim prejudice based on any denial of access to his stepfather's A-File.

Lemus has appealed the decision of the BIA to this court. He argues that *Martinez Gutierrez* should not apply to him and that this court should remand this matter to the IJ for a hearing on the question whether Lemus is eligible for cancellation of removal. He also seeks a determination by this court that the IJ's refusal to require the government to produce his stepfather's A-File prejudiced him and that, on remand, the government must produce the file.

## II.  JURISDICTION AND STANDARD OF REVIEW

Our jurisdiction derives from 8 U.S.C. § 1252(a)(1), which authorizes judicial review of final orders of removal, and § 1252(a)(2)(D), which authorizes review of questions of law. The question now before us, regarding the retroactivity of *Martinez Gutierrez*, raises a pure issue of law, which we review *de novo*. *Garfias-Rodriguez*, 702 F.3d at 512 n.6.

## III.    DISCUSSION

The issue here is straightforward.  The parties agree that, without relying on his stepfather's residential history, Lemus is ineligible for cancellation of removal.  *Martinez Gutierrez* held that the BIA's construction of the underlying statute barring such reliance was reasonable and that we are obliged to defer to it.  If *Martinez Gutierrez* is retroactive, then Lemus is ineligible for cancellation of removal, and this petition must be denied.

In *Martinez Gutierrez*, Justice Kagan recounted the dialogue between the BIA and the Ninth Circuit Court on the issue of imputation.  132 S. Ct. at 2015–18.  As of 2011, when Lemus was apprehended with the nearly fifty pounds of marijuana and pleaded guilty to making a false statement, this controversy had been going on for at least six years.  In 2005, in *Cuevas-Gaspar*, the Ninth Circuit declined to follow the BIA's restrictive construction of the statute on the issue of imputation.  430 F.3d at 1026.  In 2007, in *In re Escobar*, the BIA expressly disagreed with *Cuevas-Gaspar* with respect to allowing imputation to satisfy the seven-year residency requirement under § 1229b(a)(2), declining to follow it outside the Ninth Circuit, and also holding that imputation was impermissible to satisfy the five-year lawful permanent residency requirement under §1229b(a)(1) in all jurisdictions.  24 I. & N. Dec. at 235.  In 2008, the BIA went a step further in *Matter of Ramirez-Vargas*, 24 I. & N. Dec. 599 (BIA 2008), again rejecting *Cuevas-Gaspar*, but—relying on the Supreme Court's decision in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005)—adding that even in the Ninth Circuit, the BIA would follow its decision in *In re Escobar*, disallow imputation to satisfy §1229b(a)(2), and not apply contrary

Ninth Circuit authority.  *Id.* at 600–01.  In 2009, the Ninth Circuit, in *Mercado-Zazueta v. Holder*, 580 F.3d 1102 (9th Cir. 2009), "doubled down" (as Justice Kagan put it) on its *Cuevas-Gaspar* holding.  *Martinez Gutierrez*, 132 S. Ct. at 2016.  *Mercado-Zazueta* expressly held that the BIA's construction of the statute barring imputation was *not* reasonable and therefore not entitled to deference.  580 F.3d at 1112–13.

In sum, by 2011 when Lemus was taken into custody, the imputation controversy between the BIA and the Ninth Circuit was prominent in the landscape of immigration law. Along with the BIA, two other circuits had already parted company with the Ninth Circuit and deemed the BIA's approach to imputation a reasonable construction of § 1229b(a).  *See Deus v. Holder*, 591 F.3d 807 (5th Cir. 2009); *Augustin v. Attorney Gen.*, 520 F.3d 264 (3d Cir. 2008).

*Martinez Gutierrez* addressed two consolidated cases from the Ninth Circuit involving aliens seeking cancellation of removal under circumstances essentially identical to those before us now.  As here, neither alien could meet the eligibility requirements for cancellation without relying on a parent's residential history.  132 S. Ct. at 2016–17.  The Court held that the BIA's interpretation of § 1229b(a) was in accord with the statute's text which "does not mention imputation, much less require it."  *Id.* at 2017.  Justice Kagan noted that the hypothetical possibility of some other reasonable construction of the statute was irrelevant because the BIA's construction "prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best."  *Id*.  Because the BIA's interpretation was "based on a

permissible construction of the statute," the Court reversed the Ninth Circuit judgments. *Id.* at 2021 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

Significantly, on remand, this court in separate dispositions applied *Martinez Gutierrez* to both aliens, ruling that neither was eligible for cancellation of removal. *See Sawyers v. Holder*, 684 F.3d 911, 912 (9th Cir. 2012) (per curiam) (rejecting imputation because *Cuevas-Gaspar* and *Mercado-Zazueta* were "no longer valid precedent"); *Martinez Gutierrez v. Holder*, 474 Fed. App'x 587, 588 (9th Cir. July 11, 2012) (unpublished decision) (citing *Sawyers*). Neither the Supreme Court, nor the Ninth Circuit in its two decisions on remand, made any explicit mention of the issue of retroactivity.

Lemus argues that he relied on the then-controlling authority of this court in 2011 when he made the decision to plead guilty and exposed himself to a risk of removal. He now says that, had he known that he would be ineligible for cancellation of removal, he might not have pleaded guilty and might instead have opted to hold the government to its burden to prove the charge against him beyond a reasonable doubt.

Lemus's argument runs immediately afoul of the default rule that "a court's decisions apply retroactively to all cases still pending before the courts." *Nunez-Reyes*, 646 F.3d at 690. While *Chevron Oil* suggested, forty-five years ago, that in limited instances, departure from the default retroactivity rule might be countenanced, 404 U.S. at 106–07, we have noted that more recent Supreme Court authority "could support a conclusion that the *Chevron Oil* test no longer applies in any circumstances: all new rules of law must be

applied retroactively." *Nunez-Reyes*, 646 F.3d at 691 (citing, among other cases, *Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993)).

Two recent, carefully articulated *en banc* decisions of this court make it clear that the analysis of retroactivity set forth in *Chevron Oil* is not applicable to this case.

In *Nunez-Reyes*, we set aside a well-established circuit precedent, *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), which had held that a state conviction for a simple-possession drug crime, later expunged by the state court, did not constitute a "conviction" for federal immigration purposes. *Nunez-Reyes*, 646 F.3d at 688. We concluded that *Lujan-Armendariz* was wrongly decided, but determined, based on *Chevron Oil*, to apply our decision only prospectively, based on three considerations: (1) the court was announcing a new rule of law, overruling clear past circuit precedent; (2) retroactive application of the rule posed a risk of substantial injustice; and (3) retroactive application would not further the rule's underlying purpose. *Id.* at 692–94. In reaching this conclusion, we took into consideration undisputed evidence that "because of the clarity and consistent application" of the prior precedent, aliens for more than a decade had pleaded guilty to minor drug crimes, finished drug programs, and gotten their convictions expunged "in reliance on *Lujan-Armendariz's* promise that doing so would spare them from adverse immigration consequences." *Id.* at 692.

The case before us now is different from *Nunez-Reyes* in at least two important respects. First, in this case we are not overruling our own firmly rooted precedent. Second, though we recognize the consequences for Lemus may be serious, the

record offers no evidence that applying *Martinez Gutierrez* retroactively will risk the sort of broad injustice that concerned us in *Nunez-Reyes*. In that case, the record offered evidence that, based on advice of counsel, substantial numbers of individuals had waived their constitutional rights in reliance on the prior precedent and would be at risk of deportation by a retroactive application of the new rule. *Id.* at 693–94. In addition, *Nunez-Reyes* made clear that the *Chevron Oil* test may not be applied on a case-by-case basis—courts "must decide between pure prospectivity and full retroactivity." 646 F.3d at 690. *Chevron Oil* thus is a poor fit here and offers no help to Lemus because, as discussed above, we have already applied the rule disallowing imputation retroactively.

*Garfias-Rodriguez* offers a much closer analogy to this case. The background of that case was our decision in *Acosta v. Gonzales*, 439 F.3d 550, 551–52 (9th Cir. 2006), in which we held that aliens inadmissible under § 212(a)(9)(C)(i)(I) of the INA, 8 U.S.C. § 1182(A)(9)(c)(i)(I), might be eligible for adjustment of status based on a marriage to an American citizen. A year later, the BIA reached a contrary conclusion in *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007). In *Garfias-Rodriguez*, we held that in light of the BIA's reasoned opinion, *Briones* was entitled to deference. 702 F.3d at 514.

Having resolved the substantive issue against the petitioner, *Garfias-Rodriguez* confronted the question of retroactivity. The pivotal question on this issue was whether, in those circumstances, "we, as a judicial decisionmaker, have changed the law, or whether it is the agency that has changed the law." *Id.* *Garfias-Rodriguez* concluded that where we defer to an agency rule, we will treat the new rule "as we would if the agency had changed its own rules." *Id.*

at 516. In reaching this conclusion, we drew a bright line between the situation where we defer to an agency and the situation where, as in *Nunez-Reyes*, the circuit itself adopts a new and different rule. *Id.* at 517–18. In addressing the issue of retroactivity in a deferral situation, *Garfias-Rodriguez* held that *Chevron Oil* was "not the appropriate framework." *Id.* at 518. In these circumstances, the test to be applied was to be found in *Montgomery Ward. Id.* at 520.

When applied to determine whether agency rulings can be applied retroactively, the *Montgomery Ward* test considers:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

691 F.2d at 1333.

Applying these five factors, we find that the balance tips against Lemus.

The first factor, whether this is a case of first impression, is "not . . . well suited to the context of immigration law" and favors neither party. *Garfias-Rodriguez*, 702 F.3d at 521.

The second and third factors are intertwined. These "will favor retroactivity if a party could reasonably have anticipated the change in the law such that the new 'requirement would not be a complete surprise.'" *Id.* at 521, (quoting *Montgomery Ward*, 691 F.2d at 1333–34. *Garfias-Rodriguez* emphasized that the "ambiguity in the law—which resulted in a six-year dialogue between the BIA and us—should have given Garfias no assurances of his eligibility for adjustment of status." *Id.* at 522. Given the virtually identical facts here, *Montgomery Ward's* second and third factors must weigh heavily against Lemus. The fact that we "doubled down" in *Mercado-Zazueta* after *Garfias-Rodriguez* does not dictate a different result in this case. Simply put, although *Mercado-Zazueta* attempted to clarify this court's stance on imputation, it cannot be said that it settled the debate with such finality that the subsequent contrary decision in *Martinez Gutierrez* was a "complete surprise." Lemus was on notice that our approach was vulnerable based upon repeated contrary decisions, not only from the BIA but from other circuits as well.

The fourth factor, as in *Garfias-Rodriguez*, favors Lemus, given the increased risk of deportation he faces if *Martinez Gutierrez* is applied retroactively. *See* 702 F.3d at 523.

Finally, the fifth factor favors the government, as it has a strong interest in the uniform application of the statutory immigration scheme. *See id.* Indeed, as noted, *Martinez Gutierrez* applied retroactively to both aliens who were the subject of that case. In fact, we have subsequently applied it retroactively to nine other individuals as well. *See Santos-Martinez v. Lynch*, 620 F. App'x 586 (9th Cir. 2015); *Sanchez-Cortes v. Holder*, 579 App'x 550 (9th Cir. 2014); *Sanchez v. Holder*, 567 F. App'x 553 (9th Cir. 2014);

*Martinez-Escalera v. Holder*, 555 F. App'x 695 (9th Cir. 2014); *Paez-Carrasco v. Holder*, 544 F. App'x 789 (9th Cir. 2013); *De Zavala v. Holder*, 492 F. App'x 821 (9th Cir. 2012); *Mojica v. Holder*, 689 F.3d 1133 (9th Cir. 2012) (per curiam); *Pimentel-Ornelas v. Holder*, 475 F. App'x 223 (9th Cir. 2012); *Parra Camacho v. Holder*, 478 F. App'x 431 (9th Cir. 2012).

Having applied the *Montgomery Ward* factors and concluded that they favor retroactive application of *Martinez Gutierrez*, we should note that, even under *Chevron Oil*, the argument favoring a prospective-only application would be a very hard sell. Significantly, Judge Graber, who wrote the majority opinion in *Nunez-Reyes* favoring prospective application in that case, submitted a short, separate opinion in *Garfias-Rodriguez*, taking the position in that case that retroactive application would be appropriate under either *Chevron Oil* or *Montgomery Ward*. *Garfias-Rodriguez*, 702 F.3d at 534. Moreover, as the majority in *Garfias-Rodriguez* recognized, "In practice, we see very little substantive difference between [the *Chevron Oil*] factors and those of *Montgomery Ward*." *Id.* at 517 n.10.

Lastly, given that *Martinez Gutierrez* bars Lemus from imputing his stepfather's years of residence to obtain eligibility for cancellation of removal, his due process argument regarding access to his stepfather's A-File must also fail. Even if he obtained the file, and it confirmed his stepfather's years of residency, they would be of no help to him.

**IV.    CONCLUSION**

The BIA correctly determined that Jose Daniel Lemus is not eligible for cancellation of removal under 8 U.S.C. § 1229b(a).  This Petition is therefore **DENIED**.