**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERTO EDGARDO ALVAREZ, AKA Roberto Alvarez,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>Respondent. | No. 15-70922<br><br>Agency No. A043-432-572<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 4, 2018
Pasadena, California

Before: FISHER and OWENS, Circuit Judges and MOLLOY,[**] District Judge.

Roberto Edgardo Alvarez, a native and citizen of El Salvador, petitions for

review of the Board of Immigration Appeals' decision affirming an immigration

judge's ruling that he is ineligible for cancellation of removal, asylum, withholding

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

of removal and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252. We review for substantial evidence factual findings. *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1184 (9th Cir. 2011). We review de novo due process claims and questions of law. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). We deny in part and grant in part the petition for review.

1. Substantial evidence supports the BIA's denial of Alvarez's cancellation of removal and asylum claims. "An applicant for asylum or for cancellation of removal is not eligible for these forms of relief if he has been convicted of an aggravated felony." *Rendon v. Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008). A state drug crime qualifies as an aggravated felony if it "contains a trafficking element" or would be punishable "as a felony under the federal drug laws." *Id.* at 974; *see Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004). Here, Alvarez was convicted for possession of cocaine for sale under California Health and Safety Code § 11351.5, a drug trafficking aggravated felony under 8 U.S.C. § 1101(a)(43)(B) that renders him ineligible for asylum and cancellation of removal. *See Rendon*, 520 F.3d at 976. Because of this conviction, Alvarez does not qualify for first-offender treatment under the Federal First Offender Act, 18 U.S.C. § 3607(c). *See Nunez-Reyes v. Holder*, 646 F.3d 684, 694-95 (9th Cir.

2011) (en banc) (court may not accord FFOA treatment to crimes that are "not . . . possession crime[s] at all" and that are "qualitatively different from" the crime of simple possession).

2. Substantial evidence also supports the BIA's conclusion that Alvarez is ineligible for withholding of removal based on his two proposed social groups. First, Alvarez claims membership in a particular social group of former gang members with gang tattoos. Such a group, however, does not qualify as a cognizable social group. *See Reyes v. Lynch*, 842 F.3d 1125, 1137–38 (9th Cir. 2016) (proposed social group of former gang members who have returned to El Salvador is not cognizable); *Arteaga v. Mukasey*, 511 F.3d 940, 945 (9th Cir. 2007) (tattooed former gang members do not constitute a particular social group). Second, Alvarez claims membership in the group "member of a family whose leader, [the] father, has been targeted" or son of a former member of the Salvadoran military who has been targeted. Although family is a recognized social group, Alvarez has not demonstrated the requisite nexus between his proposed group and the harm he fears. *See Matter of L-E-A-*, 27 I. & N. Dec. 40, 45 (BIA 2017) ("[N]exus is not established simply because a particular social group of family members exists and the family members experience harm.").

3. The BIA erred, however, in summarily upholding the IJ's finding regarding CAT relief and not addressing Alvarez's contention "that if he was deported back to his country of origin, the *government would persecute him* for his former association with the M[S]-13 gang, which was quite evident given the nature of his gang related tattoos."[1] It is unclear from the BIA's limited discussion of the CAT claim whether it relied on the IJ's opinion or conducted its own independent review. *See Avetova-Elisseva v. I.N.S.*, 213 F.3d 1192, 1197 (9th Cir. 2000) ("[T]he lack of analysis that the BIA opinion devoted to the issue at hand – its simple statement of a conclusion – . . . suggests that the BIA gave significant weight to the IJ's findings."); *cf. Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) ("[O]ur review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." (internal quotation marks omitted)). We

---

[1] Alvarez made this argument concerning his gang tattoos and fear of government persecution in the section of his BIA appeal brief discussing asylum and cancellation of removal, and not under the heading "Withholding of Removal and Relief Under the Convention Against Torture." Nonetheless, we conclude Alvarez preserved this issue for appeal with regard to his CAT claim. *See Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008) (exhaustion doctrine need not be applied "in a formalistic manner" and requires only that the petitioner put the BIA on notice as to the specific issues) (internal quotation marks and citations omitted); *see also Cruz-Navarro v. INS*, 232 F.3d 1024, 1030 n.8 (9th Cir. 2000) (addressing imputed political opinion argument even though issue was argued in "slightly different manner" before the BIA); *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1136 (9th Cir. 2004) ("Mamouzian's brief may not be perfectly written, but it is not difficult to discern the point she is trying to make.").

therefore "look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Avetova-Elisseva*, 213 F.3d at 1197.

Here, the IJ's CAT claim analysis was materially deficient in two ways. First, her analysis addressed only Alvarez's fear of gang-on-gang violence without sufficiently evaluating Alvarez's fear of violence from the Salvadoran government. To be sure, the evidence of the Salvadoran government's policy against gangs and of targeting individuals with gang-related tattoos is thin. Such evidence, however, as well as argument regarding El Salvador's anti-gang policy known as *Mano Dura* or "Iron Fist" that "advocates the immediate imprisonment of gang members, who can be arrested simply for having gang related tattoos or flashing signs" was presented to the IJ. The government conceded at oral argument that the IJ, in denying CAT relief, did not distinguish between the potential for violence from gang members versus the Salvadoran government. Second, the IJ looked only at Alvarez's "long-ago gang involvement." That Alvarez is "10 years removed from gang involvement, " however, is inconsequential to the issue of his being targeted for violence—by either the government or gang members—because of his visible tattoos, which do not identify whether he is a current gang member or not. The IJ herself acknowledged the "rampant" gang violence in El Salvador that includes gang members killing other gang members.

4. We reject Alvarez's claim that the BIA violated his due process rights when it sustained the government's appeal of the IJ's earlier 2006 decision to terminate removal proceedings because of the government's failure to timely file documents related to his possession for sale conviction. Alvarez suffered no prejudice because even without the BIA's remand order, the government could have reached the same result—charging Alvarez with removability based on the possession for sale conviction—by filing a new notice to appear. *See Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014) ("To prevail on a due-process claim, a petitioner must demonstrate both a violation of rights and prejudice."). Likewise, no due process violation occurred when the BIA failed to refer his case to a three judge panel. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 851 (9th Cir. 2003) ("[I]t does not violate the Due Process Clause for one member of the BIA to decide an alien's administrative appeal."). Finally, Alvarez generally argues the BIA violated his due process rights by failing to address the evidence he submitted about El Salvador. Because any failure by the agency to consider this evidence would have affected only Alvarez's CAT claim, we need not

reach this due process contention in light of our disposition. *See supra* ¶ 3.

Petition **DENIED** in part and **GRANTED** in part and **REMANDED**.[2]

---

[2] In a previous case, the agency and this court considered Congressional Research Service Reports concerning El Salvador. *See Aguilar-Rodriguez v. Sessions*, 694 F. App'x 531, 532 (9th Cir. 2017) (unpublished) (petitioner "submitted evidence of changed country conditions that bear on whether it is reasonably likely he would be tortured or killed if he returns to El Salvador because his gang tattoos will make him a target under the aggressive anti-gang policies of the recently elected Salvadoran government"). On remand, the parties may wish to supplement the record with the most recent version of this CRS report. *See* Clare Ribando Seelke, U.S. Congressional Research Service Report for Congress: El Salvador: Background and U.S. Relations (Nov. 3, 2017) (http://fas.org/sgp/crs/row/R43616.pdf).