*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0238P (6th Cir.)
File Name: 04a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

ENGJULL THAQI,
   *Petitioner-Appellant,*

   *v.*

No. 03-1587

CAROL JENIFER, District
Director, United States
Immigration and
Naturalization Service, JAMES
ZIEGLER, Commissioner,
Immigration and
Naturalization Service, and
JOHN ASHCROFT, United
States Attorney General,
   *Respondents-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74876—Patrick J. Duggan, District Judge.

Submitted: June 18, 2004

Decided and Filed: July 23, 2004

Before: NORRIS, COLE, and ROGERS, Circuit Judges.

—————————

## COUNSEL

**ON BRIEF:** David K. Wenger, DAVID K. WENGER &
ASSOCIATES, Detroit, Michigan, for Appellant. Nancy B.
Pridgen, ASSISTANT UNITED STATES ATTORNEY,
Detroit, Michigan, for Appellee.

—————————

## OPINION

—————————

ALAN E. NORRIS, Circuit Judge.   Petitioner Engjull
Thaqi appeals from the district court's denial of his petition
for a writ of habeas corpus. Thaqi contends that the district
court erred in refusing to disturb a determination by the Board
of Immigration Appeals ("BIA") that he was not a candidate
for a discretionary waiver of deportation because a provision
of the Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") applied
retroactively to strip him of eligibility. Because the district
court incorrectly concluded that the rationale of the Supreme
Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), did
not apply to Thaqi's circumstances, we reverse its judgment.

### I.

Thaqi is a legal permanent resident of the United States and
a citizen of Yugoslavia. He was convicted of felonious
assault in Michigan state court following a jury trial on July
26, 1994. On December 31, 1995, he pleaded guilty in state
court to larceny. On March 10, 1997, the Immigration and
Naturalization Service ("INS") commenced deportation
proceedings against Thaqi, charging him with being
deportable for the commission of two unconnected crimes of
moral turpitude under § 241(a)(2)(A)(ii) of the Immigration
and Nationality Act, 66 Stat. 163, *as amended* ("INA"). *See*

8 U.S.C. § 1227(a)(2)(A)(ii). Thaqi conceded deportability but requested alternative relief, including consideration for a discretionary waiver of deportation under § 212(c) of the INA. *See* 8 U.S.C. § 1182(c) (1994). The Immigration Judge conducting Thaqi's hearing denied the § 212(c) waiver without explanation, and the BIA summarily affirmed. The BIA then denied Thaqi's motion for reconsideration, basing its decision on the conclusion that he was ineligible for a § 212(c) waiver under AEDPA because one of his convictions resulted from a jury verdict.

Following the BIA's decision, Thaqi filed a petition for a writ of habeas corpus in district court, in which he sought declaratory and injunctive relief solely on the ground that the BIA erred in determining that he was ineligible for a discretionary waiver of deportability. The district court denied Thaqi's petition, reasoning that the BIA correctly concluded that, because Thaqi had once been convicted following a jury trial, the Supreme Court's decision in *St. Cyr* did not require a determination that he remained eligible for § 212(c) relief.

## II.

An alien's eligibility for a discretionary waiver of deportation has changed over time. Thaqi became deportable under the immigration laws on December 31, 1995, the date on which his guilty plea resulted in his second criminal conviction. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). At that time, Thaqi would have been eligible for consideration for a discretionary waiver of deportation under § 212(c) of the INA. Only an alien who had "been convicted of one or more aggravated felonies and ha[d] served for such felony or felonies a term of imprisonment of at least 5 years" would have been ineligible for the waiver. 8 U.S.C. § 1182(c) (1994). Neither of Thaqi's convictions were for aggravated felonies.

By the time that deportation proceedings were initiated against Thaqi on March 10, 1997, however, the standards governing eligibility for a waiver under § 212(c) had changed. By that date, AEDPA had become effective, and had amended INA § 212(c) to cancel eligibility for waivers for aliens who, like Thaqi, had been convicted of two unconnected crimes of moral turpitude. *See* 8 U.S.C. § 1182(c) (1996). It was this provision upon which the BIA relied to determine that Thaqi was ineligible for relief under § 212(c). In his petition, Thaqi protests the application of a later-enacted law to increase the immigration consequences of his convictions.

Whether it was appropriate for the BIA to rely upon AEDPA to strip Thaqi of eligibility for the waiver based upon crimes he had committed prior to AEDPA's effective date is governed by the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). In that case, the Court had to determine whether a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, Div. C, 110 Stat. 3009-546 ("IIRIRA"), which repealed § 212(c) entirely, could be applied retroactively.[1] St. Cyr was an alien who had become deportable after pleading guilty to a drug crime under Connecticut law. At the time of his conviction on March 8, 1996, he would have been a candidate for a § 212(c) waiver. The INS, however, only initiated proceedings against St. Cyr on April 10, 1997, ten days after IIRIRA became effective, and it sought to use his drug conviction as grounds for deportation. St. Cyr requested § 212(c) relief, but the INS ruled that IIRIRA rendered him ineligible because IIRIRA repealed § 212(c). St. Cyr objected to the INS's retroactive application of IIRIRA. *St. Cyr*, 533 U.S. at 293.

---

[1] This provision of IIRIRA took effect after AEDPA had already become effective and after the INS had begun proceedings against Thaqi, and is therefore not applicable to Thaqi's case.

The Court applied a two-step test to determine whether the provision repealing § 212(c) could be applied retroactively. "[T]he first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." *Id.* at 316 (citations omitted). Having determined that Congress had not clearly stated an intent regarding retroactive application, the Court then turned to the second step, asking whether retroactively applying IIRIRA "produces an impermissible retroactive effect[:]"

The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. As we have repeatedly counseled, the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.

IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past. Plea agreements involve a *quid pro quo* between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. There can be little doubt that, as a general matter, alien defendants considering whether to enter into plea agreements are acutely aware of the

immigration consequences of the convictions. Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead proceed to trial.

The case of Charles Jideonwo, a petitioner in a parallel litigation in the Seventh Circuit, is instructive. Charged in 1994 with violating federal narcotics law, Jideonwo entered into extensive plea negotiations with the Government, the sole purpose of which was to ensure that he got less than five years to avoid what would have been a statutory bar on 212(c) relief. The potential for unfairness in the retroactive application of IIRIRA's § 304(b) [which repealed INA § 212(c)] to people like Jideonwo and St. Cyr is significant and manifest. Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in Jideonwo's and St. Cyr's position agreed to plead guilty. Now that prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief.

*Id.* at 320-24 (citations, quotations marks and footnotes omitted). In deciding Thaqi's case, we must apply the reasoning of *St. Cyr* to determine first whether the language of the statute in question reveals Congress's intent regarding retroactivity, and second, whether enforcing the statute against Thaqi would result in an impermissible retroactive effect.

On the first question, we agree with the parties that the language of AEDPA reveals nothing regarding Congress's intent. Moving to the second part of the inquiry and applying the reasoning of *St. Cyr* to Thaqi's case, we conclude that enforcing AEDPA against Thaqi would have an impermissible retroactive effect.

In *St. Cyr*, the conviction that rendered the petitioner ineligible for § 212(c) relief was the result of a guilty plea; in the opinion of the Supreme Court, St. Cyr might well have chosen to contest the charge had he known that, under later legislation, his conviction would render him ineligible for an avenue of relief from deportation. In Thaqi's case, the crime that rendered him ineligible for § 212(c) relief was also the result of a guilty plea—it was his second conviction, in which he pleaded guilty to larceny, that made him guilty of two unconnected crimes of moral turpitude. Accordingly, under the logic of *St. Cyr*, had he known that later legislation would deprive him of § 212(c) eligibility, Thaqi would likely have decided to contest the larceny charge. Accordingly, applying AEDPA retroactively to bar Thaqi from eligibility for a discretionary waiver of deportation would have an impermissible retroactive effect.[2]

The government cites various cases in which courts of appeals have concluded that where petitioners had been convicted following jury trials, the retroactive application of a statute eliminating their eligibility for § 212(c) relief would not have had impermissible retroactive effects. *See Rankine v. Reno*, 319 F.3d 93, 100-02 (2d Cir. 2003); *Dias v. INS*, 311 F.3d 456, 458 (1st Cir. 2002); *Chambers v. Reno*, 307 F.3d 284, 290-93 (4th Cir. 2002); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002). These cases,

---

[2]We note that, under *St. Cyr*, the petitioner need not demonstrate actual reliance upon the immigration laws in order to demonstrate an impermissible retroactive effect; he need only be among a class of aliens whose guilty pleas "were likely facilitated" by their continued eligibility for § 212(c) relief. *St. Cyr*, 533 U.S. at 323.

however, do not apply to Thaqi's circumstances. Although Thaqi's first conviction resulted from a jury trial, his second, the one which would render him ineligible for § 212(c) relief under AEDPA, resulted from a guilty plea.

### III.

For the foregoing reasons, the judgment of the district court is **reversed** and the case is **remanded** to the district court for further proceedings consistent with this opinion.