*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0311p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

FRANCISCO ZUÑIGA-GUERRERO,

        *Defendant-Appellant.*

No. 05-6457

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00150—Todd J. Campbell, District Judge.

Argued: July 21, 2006

Decided and Filed: August 23, 2006

Before: GILMAN and COOK, Circuit Judges; DOWD, District Judge.*

---

## COUNSEL

**ARGUED:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Holley, Caryll S. Alpert, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Byron M. Jones, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

## OPINION

---

COOK, Circuit Judge. Francisco Zuñiga-Guerrero ("Zuñiga") appeals his conviction and sentence for illegally reentering the United States following deportation. He argues that the deportation underlying his conviction was fundamentally unfair because the presiding immigration judge failed to consider him for a discretionary waiver of deportation. He also challenges the sentence imposed following his conviction. Because the immigration judge correctly determined Zuñiga to be ineligible for a waiver of deportation, and because Zuñiga fails to identify any sentencing error, we affirm.

---

*The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

I

Zuñiga entered the United States from Mexico in 1984 and became a lawful permanent resident in 1991. In 1995, he participated in a drug conspiracy, and, in September 1996, he pleaded guilty to unlawfully using a communication facility, 21 U.S.C. § 843(b), for which he received a 33-month prison sentence. The former Immigration and Naturalization Service ("INS") initiated removal[1] proceedings against Zuñiga while he served his prison sentence, and the immigration judge ("IJ") informed Zuñiga that he was ineligible for a discretionary waiver of deportation. Upon Zuñiga's release from prison, INS deported him to Mexico.

Zuñiga surfaced in Tennessee in 2004, and was prosecuted for illegal reentry after deportation in violation of 8 U.S.C. § 1326(b)(2). In the district court, Zuñiga challenged his indictment. He argued that, at the time of his removal hearing, he was eligible for a discretionary waiver of deportation, and the IJ's contrary statement rendered his deportation fundamentally unfair. The district court rejected Zuñiga's challenge to his indictment and convicted him of the charged crime after a bench trial in which Zuñiga stipulated to all facts except the propriety of his deportation. Zuñiga appeals his conviction and his 63-month sentence.

II

A. Fundamental Fairness

"This court reviews de novo the denial of a motion to dismiss an indictment and a collateral attack upon a prior removal order underlying a conviction for unlawful reentry." *United States v. Garcia-Echaverria*, 374 F.3d 440, 445 (6th Cir. 2004). Zuñiga correctly notes that a defendant accused of illegal reentry may collaterally attack his prior deportation if: (1) the defendant has exhausted his administrative remedies; (2) the deportation proceedings improperly deprived the defendant of judicial review; and (3) the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d). This case centers on the third element.

B. Retroactivity

Zuñiga maintains that his deportation was fundamentally unfair because the IJ retroactively applied a 1996 law—passed as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA")—in determining Zuñiga to be ineligible for a waiver of deportation. Before AEDPA, the Board of Immigration Appeals interpreted § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), to grant the Attorney General discretion to waive the deportation of certain aliens, *see INS v. St. Cyr*, 533 U.S. 289, 294–95 (2001), including lawful permanent residents domiciled in the United States for seven consecutive years. *Elia v. Gonzales*, 431 F.3d 268, 273 (6th Cir. 2005). Section 212(c) prohibited waiver, however, for aliens convicted of aggravated felonies and sentenced to terms of five or more years in prison. *Id.*

With AEDPA, Congress substantially curtailed the Attorney General's discretion, eliminating waiver of deportation in any case in which the alien committed an aggravated felony. AEDPA took effect on April 24, 1996—after Zuñiga's indictment for the drug conspiracy but before he pleaded guilty, and before INS initiated removal proceedings. In *In re Soriano*, 21 I. & N. Dec. 516, 519-20 (BIA 1996), the Board of Immigration Appeals decided that AEDPA barred waiver in any proceeding where the alien had not applied for waiver before AEDPA's effective date. Adhering to *Soriano*, the IJ determined that AEDPA rendered Zuñiga ineligible for any waiver of deportation.

---

[1] Because of amendments to the immigration laws, the broader term "removal" has replaced "deportation." *See Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2426 n.1 (2006).

Zuñiga argues that applying AEDPA to his deportation proceedings created an impermissible retroactive effect. To support his argument, he points to *St. Cyr*, 533 U.S. 289. There, the Supreme Court implicitly overruled *Soriano* with respect to "aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326. *St. Cyr* involved the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an act that took effect shortly after AEDPA and further reduced the Attorney General's discretion to grant relief. *See id.* at 297. Noting the quid pro quo nature of a plea bargain, *id.* at 321-22, the Court applied the *Landgraf* retroactivity analysis and determined that, "[b]ecause [St. Cyr], and other aliens like him, almost certainly relied upon [waiver eligibility] in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect." *Id.* at 325. Thus the Court held that "'familiar considerations of fair notice, reasonable reliance, and settled expectations'" prohibited retroactive application of the IIRIRA to bar relief for such aliens. *Id.* at 323-24 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)).

Like the Court in *St. Cyr*, we apply the *Landgraf* analysis in determining AEDPA's reach in this case. The first step of the analysis is to ascertain whether Congress clearly intended its legislation to operate retroactively. *Id.* at 316. This court has already concluded that "the language of AEDPA reveals nothing regarding Congress's intent." *Thaqi v. Jenifer*, 377 F.3d 500, 503 (6th Cir. 2004); *see Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121 (9th Cir. 2002) ("Congress did not prescribe § 440(d)'s temporal reach."). We thus turn to the second step of the *Landgraf* analysis: whether applying AEDPA to Zuñiga's case creates a retroactive effect. *St. Cyr*, 533 U.S. at 320.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269 (citation omitted). Instead, the retroactivity analysis turns on

> whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . . [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* at 270.

Zuñiga asks us to adopt the view that AEDPA applies only to bar waiver for aliens who committed a deportable offense after April 24, 1996. *See generally Mohammed v. Reno*, 205 F. Supp. 2d 39, 48 (E.D.N.Y. 2002) (favoring such a rule). We know of no circuit that has adopted this approach; in fact, our sister circuits have uniformly noted "the absurdity of arguing that one would not have committed a crime in the first place . . . if he had known he could not ask for a § 212(c) waiver." *Kelava v. Gonzales*, 434 F.3d 1120, 1125 (9th Cir. 2006); *see also Khan v. Ashcroft*, 352 F.3d 521, 523 (2d Cir. 2003); *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998). And our prior opinions foreclose Zuñiga's interpretation. *See Garcia-Echaverria v. United States*, 376 F.3d 507, 516 (2004) (holding that habeas petitioner "became ineligible for a waiver of deportation" "[b]ecause he pleaded guilty . . . after the AEDPA was enacted on April 24, 1996"); *see also Patel v. Gonzales*, 432 F.3d 685, 691 (6th Cir. 2005) ("This Court stated [in *Garcia-Echaverria*] that the relevant conduct was the guilty plea and not when the offense was committed, presumably because the guilty plea was more likely than the criminal offense to be made in reliance on the waiver."). We conclude that AEDPA is permissibly applied to bar discretionary waiver to aliens who committed criminal conduct before AEDPA's enactment.

Zuñiga alternatively asks this court to find that AEDPA creates a retroactive effect in his situation because he rejected an offered plea bargain two days before AEDPA took effect. Pointing to the Third Circuit's decision in *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004), he argues that aliens who reject offered plea bargains rely on waiver eligibility just as much as those who, like St. Cyr, accept such offers. *See Ponnapula*, 373 F.3d at 496 ("[I]f it was reasonable in *St. Cyr* for an alien to rely on the attenuated availability of § 212(c) relief in *accepting* a plea agreement, we see no reason why it would be unreasonable for the same alien to likewise rely in *declining* a plea agreement."). We disagree.

Unlike St. Cyr, Zuñiga does not belong to a class of aliens whose actions "were likely facilitated by their continued eligiblity for § 212(c) relief." *Thaqi*, 377 F.3d at 504 n.2 ("[U]nder *St. Cyr*, the petitioner need not demonstrate actual reliance upon the immigration laws in order to demonstrate an impermissible retroactive effect; he need only be among a class of aliens whose guilty pleas 'were likely facilitated' by their continued eligibility for § 212(c) relief."). The Court in *St. Cyr* found a likelihood that the alien's decision regarding the plea bargain turned on the availability of discretionary waiver. *See St. Cyr*, 533 U.S. at 323 ("[P]reserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead proceed to trial."). Stated differently, the Court could not say that, in a post-IIRIRA world without waiver, St. Cyr would have pleaded guilty—and forgone valuable constitutional rights—given the same options. *See id.* at 325 (noting that aliens like St. Cyr "almost certainly relied upon [waiver eligibility] in deciding whether to forgo their right to a trial"). Because aliens in St. Cyr's position likely detrimentally relied on the availability of waiver, it was unfair to deny them a primary benefit of the bargain. *See id.* at 323-24 ("Now that prosecutors have received the benefit of . . . agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief." (quotation omitted)).

This case, however, presents little probability that Zuñiga's decision turned on the availability of discretionary waiver. On the contrary, we can be certain that Zuñiga, and those similarly situated, would have rejected the offered plea bargain in a post-AEDPA world. Zuñiga rejected a plea agreement that would have resulted in a sentence less than five years—in other words, one that at that time meant waiver eligibility. To the extent that he perceived any chance of going to trial, his desire to be eligible for waiver militated in favor of accepting the plea. *See Thom v. Ashcroft*, 369 F.3d 158, 162 (2d Cir. 2004) (discussing various waiver-based reasons an alien may plead guilty rather than going to trial, such as to receive a sentence less than five years or to be seen as accepting responsibility for his actions). And to the extent that he believed he would be eligible for waiver whether he accepted this plea bargain or not, waiver cannot be said to have dictated his decision; he would have made the same decision had waiver been removed from the calculus entirely (that is, if he believed he would be *ineligible* for waiver whether he accepted or not).

Zuñiga asks us to credit the decision he would have made had he anticipated *St. Cyr*. In essence, he argues that, had he known that a decision to accept the plea agreement would maintain his eligibility (in light of *St. Cyr*) while a decision to reject the agreement would not, he (and others similarly situated) would have accepted. But our inquiry turns on whether Zuñiga might have acted differently had he anticipated AEDPA's application to his deportation proceedings, not whether he might have acted differently had he anticipated *St. Cyr*. The Supreme Court concluded that St. Cyr likely would have declined to plead guilty had he known that IIRIRA would apply to his proceedings, and thus it found an impermissible retroactive effect. But Zuñiga cannot plausibly

claim that he would have acted any differently.[2] *See Hernandez-Castillo v. Moore*, 436 F.3d 516, 520 n.3 (5th Cir. 2006) ("[Hernandez-Castillo] equates the refusal to take a plea agreement with detrimental reliance on § 212(c). As the *Rankine* court makes clear, however, Hernandez-Castillo's argument is nonsensical . . . ."); *Swaby v. Ashcroft*, 357 F.3d 156, 161-62 (2d Cir. 2004) (rejecting petitioner's theory that he relied on waiver eligibility by declining a plea agreement); *see also Dias v. INS*, 311 F.3d 456, 458 (1st Cir. 2002) ("We now join the Seventh and Ninth Circuits in ruling that application of the new statutory limitations on discretionary relief does not have an impermissible retroactive effect on those aliens who would have been eligible for discretionary relief when they were convicted of a felony after trial."); *Chambers v. Reno*, 307 F.3d 284 (4th Cir. 2002) (holding that IIRIRA produces no retroactive effect when applied to alien's pre-IIRIRA decision to go to trial).

We perceive no impermissible retroactive effect in the IJ's application of AEDPA to Zuñiga. Accordingly, Zuñiga fails to demonstrate fundamental unfairness in his deportation, and we affirm his conviction for illegal entry following deportation.

## C. Sentencing

Zuñiga also challenges the sentence that the district court imposed. The district court, in determining the relevant advisory-Guidelines range, applied a 16-level enhancement for Zuñiga's prior conviction for unlawful use of a communication facility in violation of 21 U.S.C. § 843(b). The district court characterized the crime as a "drug trafficking offense" within the meaning of United States Sentencing Guidelines § 2L1.2. Zuñiga argues that a conviction under § 843(b) cannot constitute a "drug trafficking offense" but instead should be considered nothing more than an "aggravated felony" that garners only an 8-level enhancement under Guidelines § 2L1.2.

In *United States v. Orihuela*, 320 F.3d 1302 (11th Cir. 2003), the Eleventh Circuit ably answered Zuñiga's argument. The court reasoned that a § 843(b) conviction entails the Government proving that the accused employed a communication facility (such as a telephone) to facilitate "the commission by someone of an underlying controlled substance offense," and that such conduct amounts to aiding and abetting the underlying offense. *Id.* at 1304-05; *see United States v. Dotson*, 895 F.2d 263, 264 (6th Cir. 1990) (discussing the elements of a § 843(b) violation). Every circuit to consider the question has followed the Eleventh Circuit's lead. *See United States v. Gutierrez-Ortiz*, 86 F. App'x 729, 730 (5th Cir. 2004); *United States v. Duarte*, 327 F.3d 206, 207 (2d Cir. 2003) (rejecting the argument "[f]or the reasons given by the Eleventh Circuit in . . . *Orihuela*). We agree with our sister circuits and find that Zuñiga's § 843(b) conviction constituted a drug trafficking offense.

Zuñiga also challenges the district court's authority to order his supervised release tolled in the event that he is deported. He acknowledges that his argument conflicts with binding circuit precedent, *see United States v. Isong*, 111 F.3d 428 (6th Cir. 1997), but argues that our precedent is "fundamentally unsound." We lack the authority to overrule a prior panel's decision, *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234-35 (6th Cir. 2003), and we accordingly reject Zuñiga's argument.

---

[2] It matters not that Zuñiga ultimately pleaded guilty (after AEDPA took effect) instead of going to trial. The pertinent question is whether he may plausibly claim detrimental reliance at the time he rejected the offered plea bargain. Thus Zuñiga's case falls squarely in line with cases in other circuits in which the alien rejected a plea agreement in favor of trial. Even if Zuñiga rejected the first offered plea agreement on the theory that he could procure a more favorable agreement, he would have behaved precisely the same way post-AEDPA. To the extent that he was motivated to seek more favorable plea terms by a desire to appear less culpable before the IJ (that is, to the extent that he would have chosen to accept the first offer in a post-AEDPA world without waiver), any reliance was not detrimental—he received more favorable plea terms, and accepted those terms after AEDPA took effect.

III

Because we find no fundamental unfairness in Zuñiga's prior deportation, and because Zuñiga identifies no sentencing error, we affirm the judgment of the district court.