NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  18a0165n.06

Case No. 17-3909

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| | | **FILED** |
| | | Mar 30, 2018 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JOSE HERNANDEZ-RUIZ, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  GUY, SUTTON, and COOK, Circuit Judges.

SUTTON, Circuit Judge.  The Government charged Jose Hernandez-Ruiz with illegally re-entering the United States after being removed.  He challenges the admission of his removal order into the criminal proceedings.  Because Hernandez-Ruiz knowingly and voluntarily agreed to a stipulation of removal, we affirm the admission of his removal order and his conviction.

The United States deported Jose Hernandez-Ruiz in March 2011.  In September 2016, the Government found him in Miami County, Ohio, and charged him with illegally reentering the country.  8 U.S.C. § 1326(a).  Hernandez-Ruiz moved to suppress the removal order before his criminal trial.  The district court denied the motion, finding that Hernandez-Ruiz signed a stipulation of removal "with full knowledge of his ability to seek counsel or exercise the rights he was giving up."  R. 24 at 8.  Hernandez-Ruiz entered a conditional guilty plea that preserved his right to appeal the decision.

We give fresh review to Hernandez-Ruiz's challenge to his deportation order. *United States v. Zuniga-Guerrero*, 460 F.3d 733, 735 (6th Cir. 2006). In doing so, we defer to the district court's factual findings as long as they are not clearly wrong. *United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003).

Aliens have ample ways to challenge removal orders and related proceedings at the time they occur. But their ability to challenge a removal order in a subsequent criminal prosecution is circumscribed by 8 U.S.C. § 1326(d). Here is what it says:

> **(d) LIMITATION ON COLLATERAL ATTACK ON UNDERLYING DEPORTATION ORDER**
> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

Hernandez-Ruiz agreed, at the time of his March 2011 removal, that he was "an alien present in the United States who has not been admitted or paroled" and waived "the right to have a hearing before an Immigration Judge" and "the right to appeal the Immigration Judge's written order of removal." R. 36 at 4, 8, 11. This waiver precluded Hernandez-Ruiz from exhausting administrative remedies, and § 1326(d) prevents him from obtaining collateral relief today. That leaves one option: He may invalidate the waiver on the ground that he did not make it knowingly and voluntarily. *Martinez-Rocha*, 337 F.3d at 569. But he cannot clear that bar.

The evidence shows that Hernandez-Ruiz executed a valid waiver. Immigration and Customs Enforcement Officer William Belanich interviewed Hernandez-Ruiz in 2011. Belanich speaks Spanish and uses it regularly during removal proceedings. In conducting removal

interviews, he first determines whether the detainee speaks Spanish, and he began this interview by doing that. Hernandez-Ruiz speaks Spanish.

Belanich handed Hernandez-Ruiz a notice of rights written in Spanish informing him that he could (1) request a hearing before an immigration judge, (2) assert a claim of fear in front of an immigration court, or (3) admit that he was removable and waive any hearing. Hernandez-Ruiz read the document and chose the third option.

Belanich gave Hernandez-Ruiz a list of free legal service providers and a notice to appear, a formal allegation of a violation of immigration laws. Hernandez-Ruiz read the notice and signed it. Hernandez-Ruiz received a notice of custody determination, which he read and signed, indicating that he did not request a redetermination of his custody decision.

Belanich gave Hernandez-Ruiz the stipulation of removal, which explained (in English and Spanish) the rights he would waive by admitting that he was removable. Hernandez-Ruiz told Belanich that he read the Spanish version of the stipulation. In an abundance of caution, Belanich asked Hernandez-Ruiz to recite paragraphs 2, 3, 5, and 10 of the stipulation aloud. He did so. Hernandez-Ruiz initialed each page of the stipulation and signed the document. On this record, Hernandez-Ruiz waived these rights knowingly and voluntarily.

Hernandez-Ruiz faults Belanich for not making him read paragraphs 6 ("I do not want to have a hearing before an Immigration Judge") and 14 ("I knowingly and willingly waive the right to appeal") of the stipulation aloud. R. 36 at 9, 11. But this argument misunderstands the goal of the recitation exercise. The point is to ensure that the detainee can read and understand the agreement, not to ratify discrete provisions. Besides, paragraphs 6 and 14 largely duplicate paragraph 5, which states that "by signing this Stipulation, I will be giving up . . . the right to

3

have a hearing before an Immigration Judge [and] the right to appeal the Immigration Judge's decision." *Id.* at 8–9. Hernandez-Ruiz recited paragraph 5.

Hernandez-Ruiz adds that Belanich should have asked about his educational background. That may well be a reasonable approach if the detainee seems confused or lost. But no evidence shows any such thing happened. So far as the record shows, Belanich took numerous steps to ensure that Hernandez-Ruiz could read and understand the stipulation, and Hernandez-Ruiz confirmed that he did, through speech and writing alike. A knowing waiver requires no more.

Hernandez-Ruiz insists that we should invalidate the waiver because he did not have the assistance of a lawyer. But Hernandez-Ruiz remained free to call a lawyer during the interview, and Belanich gave him a list of free legal services before he agreed to the stipulation. Hernandez-Ruiz offers no authority for the proposition that a lawyer still must be on the scene in a setting with no "contemplation of any kind of criminal case." R. 19 at 63. Nor can we come up with one on our own.

We affirm.