FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SALVADOR ROBLES LOPEZ, AKA Salvador Robles, *Petitioner*, | No. 15-72747 |
| v. | Agency No. A38-817-213 |
| JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 18, 2018
San Francisco, California

Filed August 22, 2018

Before: N. Randy Smith and Michelle T. Friedland, Circuit Judges, and Barbara M. G. Lynn,[*] Chief District Judge.

Opinion by Chief District Judge Lynn;
Dissent by Judge Friedland

---

[*] The Honorable Barbara M.G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

# SUMMARY**

### Immigration

The panel denied Salvador Robles Lopez's petition for review from a decision of Board of Immigrations Appeals, holding that: 1) Lopez's conviction for possession for sale of cocaine salt in violation of California Health & Safety Code § 11351 was an aggravated felony; 2) his conviction remained a valid ground of deportation despite its expungement; 3) he was ineligible for a waiver of deportation under former Immigration and Nationality Act § 212(c); and 4) the BIA did not err in denying relief under the Convention Against Torture.

The panel held that Lopez's conviction under California Health & Safety Code § 11351 qualified as an aggravated felony, applying the three-step process for determining whether his violation would be punishable as a felony under the Controlled Substance Act (CSA), and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). First, the panel explained that possession of a controlled substance with intent to distribute is a felony under the CSA. Second, the panel explained that, although § 11351 is categorically broader than the federal offense, this court has held that § 11351 is divisible as to the type of controlled substance. Third, applying the modified categorical approach, the panel concluded that the indictment and minute order indicated that Lopez pleaded no contest to possession for sale of cocaine salt, which is a controlled substance under the CSA.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Next, the panel held that Lopez's conviction remained a valid ground of deportation despite its expungement under California Penal Code § 1203.4. The panel noted that a conviction generally remains valid for immigration purposes after expungement under § 1203.4, but that an exception exists for certain petitioners who satisfy the requirements of the Federal First Offender Act. However, the panel explained that the exception did not apply to Lopez because the Federal First Offender Act only applies to convictions for simple possession, and Lopez had been convicted of possession *for sale* of a controlled substance.

The panel also held that Lopez was not eligible for a waiver of deportation under former § 212(c). The BIA held that Lopez was ineligible for § 212(c) relief because he was convicted of an aggravated felony after the effective date of § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), which made § 212(c) relief unavailable to any lawful permanent resident who was deportable for an aggravated felony. Lopez argued that § 440(d) had an impermissible retroactive effect because the commission of his offense predated the effective date.

The panel held that § 440(d) did not attach new legal consequences to the commission of an aggravated felony; it only attached new legal consequences to the conviction. The panel observed that this court has repeatedly held that the proper date to be used in determining the applicability of § 440(d) is the date of conviction, not the date of the commission of the offense. Accordingly, the panel held that Lopez was ineligible for § 212(c) relief because he was convicted after the effective date of § 440(d).

The panel also rejected Lopez's argument that applying § 440(d) to bar his eligibility for § 212(c) relief was an equal

protection violation, concluding that he failed to establish that his treatment differed from that of similarly situated persons.

Finally, the panel held that the BIA did not err in denying deferral of deportation under CAT, explaining that his contentions regarding his fears of returning to Mexico were not sufficiently particularized. The panel noted Lopez's testimony concerning crime and gangs, as well as his fear that he would be perceived as having money as a returnee from the United States, but concluded that such evidence did not establish that any harm to Lopez would rise to the level of torture.

Judge Friedland dissented from the majority's conclusion that Lopez was ineligible for a § 212(c) waiver. Judge Friedland would conclude that applying AEDPA's version of § 212(c) here would be impermissibly retroactive because it would impose new consequences on the commission of Lopez's offense. Judge Friedland reasoned that the conviction itself is not the only relevant event for the purposes of the retroactivity analysis, observing that in *Vartelas v. Holder*, 566 U.S. 257 (2012), the Supreme Court recognized that a newly amended immigration provision created new consequences for multiple past events— including the commission of an offense—thereby making such an application impermissibly retroactive.

**COUNSEL**

Thomas D. Pamilla (argued), Law Offices of Thomas D. Pamilla APC, Fremont, California, for Petitioner.

Victor M. Lawrence (argued) Assistant Director; Jennifer A. Singer, Trial Attorney; Jennifer P. Levings, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

LYNN, Chief District Judge:

After Salvador Robles Lopez was convicted of possession for sale of cocaine salt, an immigration judge ordered his deportation, and the Board of Immigration Appeals ("BIA") affirmed. We deny Lopez's petition for review of the BIA's decision.

**I. BACKGROUND**

Lopez is a citizen of Mexico who was admitted to the United States as a lawful permanent resident ("LPR") on October 7, 1984. On September 23, 1996, after entering a plea of no contest, he was convicted of possession for sale of cocaine salt in violation of California Health & Safety Code ("CHSC") § 11351. On January 18, 2008, the conviction was expunged pursuant to California Penal Code § 1203.4.

On September 21, 2009, the Department of Homeland Security ("DHS") initiated deportation proceedings against Lopez. The DHS cited two grounds for deportation: 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an

aggravated felony, and 8 U.S.C. § 1227(a)(2)(B)(i), as an alien convicted of a controlled substance violation. Lopez conceded that he was deportable, having been convicted of a controlled substance violation, but denied that he was deportable based on the aggravated felony ground.

The immigration judge held that Lopez's violation of CHSC § 11351 constituted an aggravated felony, and that his expunged conviction remained a valid ground for deportation. Furthermore, the judge concluded that Lopez was ineligible for a discretionary waiver under the former Immigration and Nationality Act ("INA") § 212(c) and denied deferral under the Convention Against Torture ("CAT"). The judge ordered his deportation, and the BIA affirmed.

## II. STANDARDS OF REVIEW

We have jurisdiction under 8 U.S.C. § 1252. We review legal conclusions *de novo*, such as whether Lopez was convicted of a crime that constitutes an aggravated felony, *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000), whether his expunged conviction remains a valid ground for deportation, *de Jesus Melendez v. Gonzales*, 503 F.3d 1019, 1023 (9th Cir. 2007), and whether he is eligible for § 212(c) relief, *Cervantes-Gonzales v. INS*, 244 F.3d 1001, 1004 (9th Cir. 2001).

We review factual findings made as to Lopez's CAT claim for substantial evidence. *Haile v. Holder*, 658 F.3d 1122, 1130–31 (9th Cir. 2011). "Substantial evidence" means the determination is supported by "reasonable, substantial, and probative evidence on the record." *Id.* at 1131 (quoting *Morales v. Gonzales*, 478 F.3d 972, 983 (9th Cir. 2007)).

# III.  DISCUSSION

## A. Lopez Is Deportable as an Alien Convicted of an Aggravated Felony

Any alien who is "convicted of an aggravated felony at any time after admission is deportable."    8 U.S.C. § 1227(a)(2)(A)(iii).   Lopez argues that his violation of CHSC § 11351 does not constitute an aggravated felony. We disagree.

Any state crime that is a categorical match to an offense under the Controlled Substances Act ("CSA") constitutes an aggravated felony.    *See*  8  U.S.C.  § 1101(a)(43)(B); 18 U.S.C.  § 924(c)(2).   There is a three-step process for determining whether Lopez's violation of CHSC § 11351 is punishable as a felony under the CSA:

> At the first step, we ask whether the statute of conviction is a categorical match to the generic predicate offense; that is, if the statute of conviction criminalizes only as much (or less) conduct than the generic offense.  If so, the inquiry ends, because the conviction categorically constitutes a predicate offense. If not, we move on to step two and ask if the statute of conviction's comparatively "overbroad" element is divisible.  If not, then our inquiry ends, because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense.   But if the overbroad element (or elements) is divisible, we then continue to the third step, an application of the modified categorical approach.

*Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014) (citations and footnote omitted).

There is no dispute about the first two steps. First, possession of a controlled substance with intent to distribute is a felony under the CSA. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C). CHSC § 11351 is categorically broader than this federal offense because "California's list of controlled substances includes one or more substances not controlled by federal law." *Medina-Lara*, 771 F.3d at 1112. Second, CHSC § 11351 is "divisible with respect to the type of controlled substance." *United States v. Torre-Jimenez*, 771 F.3d 1163, 1167 (9th Cir. 2014).

The third step, the modified categorical approach, requires us to determine "whether the facts proven at trial or admitted by the defendant as part of his guilty plea establish that the defendant was convicted of all the elements of the relevant federal generic offense." *Torre-Jimenez*, 771 F.3d at 1167 (quoting *Sanchez-Avalos v. Holder*, 693 F.3d 1011, 1014–15 (9th Cir. 2012)). For a plea, we look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The indictment and the minute order indicate that Lopez pleaded no contest to possession for sale of cocaine salt. Cocaine salt is a controlled substance found in schedule II of the CSA. *See* 21 U.S.C. § 812. Because Lopez's violation of CHSC § 11351 encompasses all of the elements of a felony

punishable under the CSA, it qualifies as an aggravated felony.[1]

Furthermore, Lopez's conviction remains a valid ground for deportation, despite its expungement. For immigration purposes, a person generally "continues to stand convicted of an offense notwithstanding a later expungement" under California Penal Code § 1203.4. *Ramirez-Castro v. INS*, 287 F.3d 1172, 1174 (9th Cir. 2002). We have recognized one exception. If a petitioner could have satisfied the requirements of the Federal First Offender Act ("FFOA"), 18 U.S.C. § 3607, then the expungement of the petitioner's conviction under state law eliminates the immigration consequences of the offense. *See Lujan-Armendariz v. INS*, 222 F.3d 728, 749 (9th Cir. 2000), *overruled by Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011).[2] However, the FFOA only applies to first time drug offenders convicted of simple possession of a controlled substance. *Id.* (citing 18 U.S.C. § 3607). Because Lopez was convicted of possession *for sale* of a controlled substance, the exception does not apply. *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1075 (9th Cir. 2013) ("[P]ossession for sale is not a first-time simple possession offense that would qualify for treatment under the FFOA.").

---

[1] We need not reach Lopez's arguments regarding his eligibility for withholding of removal. He has conceded that a conviction for an aggravated felony would make him ineligible.

[2] *Lujan-Armendariz* is still applicable here. *See Nunez-Reyes*, 646 F.3d at 694 ("For those aliens convicted before the publication date of this decision, *Lujan-Armendariz* applies. For those aliens convicted after the publication date of this decision, *Lujan-Armendariz* is overruled.").

## B. Lopez Is Not Eligible for Waiver of Deportation Under § 212(c)

Any LPR with "a lawful unrelinquished domicile of seven consecutive years" was originally eligible to apply for a discretionary waiver from deportation under § 212(c). *See INS. v. St. Cyr*, 533 U.S. 289, 295 (2001) (quoting 8 U.S.C. § 1182(c) (1994)). Congress later modified eligibility for § 212(c) relief through the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). Under § 440(d) of AEDPA, which became effective April 24, 1996, a LPR who was "deportable by reason of having committed" an aggravated felony became ineligible for § 212(c) relief. *Id.* On April 1, 1997, § 212(c) was repealed altogether. *See* Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597 (1996). However, this relief remains available to an alien "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 290.

The BIA held that Lopez was ineligible for § 212(c) relief because he was convicted of an aggravated felony after the effective date of § 440(d). Lopez argues that § 440(d) has an impermissible retroactive effect because the conduct underlying his aggravated felony conviction predates the effective date.**[3]** We disagree.

---

**[3]** Petitioner committed the acts underlying his CHSC § 11351 conviction on or about September 13, 1995.

The Supreme Court has outlined a two-step process for determining whether a civil statute may apply retroactively:

> [First,] the court must determine whether Congress expressly provided that the statute should apply retroactively. If the answer is yes, then the inquiry is complete and the statute applies retroactively. If the answer is no, then the court must proceed to the second step and determine whether the statute would have a retroactive effect. If the statute would operate retroactively, then the court must apply the traditional presumption against retroactivity and prohibit retroactive application of the statute.

*Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1115 (9th Cir. 2013) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)) (internal quotation marks and citations omitted). The parties agree that Congress did not expressly provide for application of § 440(d) to those whose conduct underlying an aggravated felony conviction predates AEDPA's effective date. We therefore focus on the second step of the *Landgraf* framework.

A statute does not impermissibly operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. A determination of whether a statute impermissibly operates retroactively turns on "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. We hold that § 440(d) did not attach new legal consequences to the commission of an aggravated felony.

Under § 440(d), a LPR who is deportable by reason of having committed an aggravated felony is ineligible for § 212(c) relief. The LPR is not deportable until he or she is convicted. 8 U.S.C. § 1227(a)(2)(A)(iii); *see also St. Cyr*, 533 U.S. at 314–15 ("[I]mportant legal consequences ensued from respondent's entry of a guilty plea in March 1996: (1) He became subject to deportation . . . ."); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("[D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."). § 440(d) thus attached new legal consequences to the conviction for an aggravated felony, not to its commission. Indeed, we have repeatedly held that the proper date to be used in determining the applicability of § 440(d) is the date of conviction.[4] *See Cardenas-Delgado*, 720 F.3d at 1115 (noting that after its effective date, the AEDPA "rendered all aliens convicted of aggravated felonies ineligible for discretionary relief from deportation"); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1051 (9th Cir. 2005); *United States v. Velasco-Medina*, 305 F.3d 839, 849 (9th Cir. 2002).

---

[4] Other circuit courts addressing the issue have held the same. *See United States v. Zuniga-Guerrero*, 460 F.3d 733, 737 (6th Cir. 2006) ("We conclude that AEDPA is permissibly applied to bar discretionary waiver to aliens who committed criminal conduct before AEDPA's enactment."); *Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) ("AEDPA § 440(d) is not impermissibly retroactive as applied to aliens such as Khan who pleaded guilty following AEDPA's effective date, even if the criminal conduct underlying their convictions took place before AEDPA's effective date."); *Lawrence v. Gonzales*, 446 F.3d 221, 225 (1st Cir. 2006) (rejecting that "availability of section 212(c) relief should be determined based upon when the *conduct* underlying his conviction took place"); *Atkinson v. Att'y Gen.*, 479 F.3d 222, 231 n.8 (3d Cir. 2007) ("[A]bsent a legal determination of guilt, the alien is not subject to deportation or in need of section 212(c) relief.").

As discussed above, the structure and text of the statute indicate that the fact of conviction (not the underlying conduct) is the relevant transaction for purposes of the retroactivity analysis. Although § 212(c) refers to the "commission" of the offense, we must construe the scope of the statute by examining "the statute's text in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 547 (2005). We do not read a "single word . . . in isolation," but instead we look to the statutory scheme for clarification and contextual reference. *Smith v. United States*, 508 U.S. 223, 233–34 (1993). Here, the structure of the statute requires an alien to be in removal proceedings, which occurs only when he or she has pleaded guilty and has been "convicted of an aggravated felony at any time after admission," 8 U.S.C. § 1227(a)(2)(A)(iii), before he or she may request relief under § 212(c). *See Pascua v. Holder*, 641 F.3d 316, 320 (9th Cir. 2011). Second, the text of the statute indicates that being "convicted" renders a person removable. 8 U.S.C. § 1227(a)(2)(A)(iii). By contrast, where Congress intends to attach consequences to the underlying criminal conduct, it has done so. For example, Congress attached legal consequences to "[a]ny alien who has engaged, is engaged, or at any time after admission engages in" terrorist activities. 8 U.S.C. § 1227(a)(4)(B). Congress did not require that an alien plead guilty or be convicted in order to be deportable for this offense. *See id.*; *see also Kelava v. Gonzales*, 434 F.3d 1120, 1124–25 (9th Cir. 2006) (noting that for a LPR found deportable under 8 U.S.C. § 1227(a)(4)(B), "there is no special immigration significance to his guilty plea" because the LPR is deportable based on the conduct, not the conviction). Where Congress employs different language in related sections of a statute we presume these "differences in language . . . convey differences in meaning." *See Wisconsin Cent. Ltd. v. United States*, 138 S.

Ct. 2067 (2018) (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017)).

Because Lopez was convicted of an aggravated felony after the effective date of § 440(d), he is ineligible for § 212(c) relief.

Finally, Lopez argues that applying § 440(d) to bar his eligibility is an equal protection violation.  To succeed on that argument, Lopez must establish that his treatment differed from that of similarly situated persons. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985) (explaining that the guarantee of equal protection directs that "all persons similarly situated be treated alike").   His argument fails "because [he] was convicted . . . after the effective date of [AEDPA] and is therefore not similarly situated to those permanent residents who could have relied upon the availability of 212(c) relief because they entered pleas prior to" the effective date.  *Cardoza-Fuentes v. Holder*, 362 F. App'x 799, 800 (9th Cir. 2010).

## C. The BIA Did Not Err in Denying Deferral of Deportation Under CAT

To qualify for deferral, an alien must establish that he "is more likely than not to be tortured."  8 C.F.R. § 1208.17. Torture is defined as "an extreme form of cruel and inhuman treatment" that is "specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 1208.18(a). The BIA did not err in denying Lopez deferral under CAT.

Lopez's contentions regarding his fears of returning to Mexico are not sufficiently particularized.  *See also Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is

insufficient to . . . establish prima facie eligibility for protection under the CAT."); *Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008) ("[Evidence] do[es] not indicate that [petitioner] would face any particular threat of torture beyond that of which all citizens of Nepal are at risk."). Evidence indicates that, in Mexico, inhumane treatment and torture are directed against certain groups of people, like journalists and mental health patients. However, that evidence is not particular to Lopez, and he provides no evidence that he would be subject to such treatment if he returned to Mexico. *See Wakkary v. Holder*, 558 F.3d 1049, 1068 (9th Cir. 2009) (noting that the petitioner failed to "provide some reason to think that he is likely to be tortured by the actors he fears").

Lopez also testified that there are "a lot of robberies" in Mexico, that he has heard from "a lot of people" that business owners in Mexico are forced to pay protection money to gangs, and that as a returnee from the United States, people will perceive him as "ha[ving] money." Such evidence does not provide a sufficient basis to conclude that any harm to Lopez would rise to the level of torture. Accordingly, the record does not compel reversal of the BIA's decision.

**PETITION DENIED.**

FRIEDLAND, Circuit Judge, dissenting:

Although I join most of the majority's opinion, I disagree with its conclusion that Petitioner was ineligible for a § 212(c) waiver. Rather, I believe that AEDPA's amendment to § 212(c) cannot be applied to Petitioner because such an application would be impermissibly retroactive. I therefore dissent from Part III(B).

As the majority describes, the pre-AEDPA version of § 212(c) allowed any lawful permanent resident who had resided in the United States for "'seven consecutive years' to apply for a discretionary waiver from deportation." *INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (quoting 8 U.S.C. § 1182(c) (1994)). AEDPA § 440(d) amended § 212(c) to provide that a petitioner who is deportable because he has committed an aggravated felony is ineligible to apply for that waiver. *See* Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996). That amendment was effective April 24, 1996. *See id.*

Petitioner committed his offense in September 1995, before the effective date of the amendment, but he pleaded nolo contendere to that offense after § 440(d) took effect. Although previous cases have held that § 440(d)'s amendment to § 212(c) applies in cases where a petitioner pleaded guilty after § 440(d)'s effective date, we have not addressed the effect of a petitioner's having committed the offense before that date. *See United States v. Velasco-Medina*, 305 F.3d 839, 849 (9th Cir. 2002); *see also Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1054 (9th Cir. 2005). Petitioner thus presents us with a question of first impression: whether § 440(d) would be impermissibly retroactive as applied to him because it would attach new consequences to the commission of his offense.

As the majority explains, "the first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." *St. Cyr*, 533 U.S. at 316. It is undisputed that Congress did not direct that § 440(d) should be retroactive. We must therefore "proceed to the second step and determine whether the statute would have a retroactive effect" if applied to Petitioner. *Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1115 (9th Cir. 2013). "If the statute would operate retroactively, then [we] must apply the traditional presumption against retroactivity and prohibit retroactive application of the statute." *Id.* "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70. I agree with the majority that this case hinges on that second step.

At step two, however, I would conclude that applying AEDPA's version of § 212(c) here would be impermissibly retroactive because it would impose new consequences on Petitioner's commission of his offense. Indeed, at the time Petitioner committed his offense, he was eligible for a waiver allowing him to stay in the United States notwithstanding his conduct. But under AEDPA's version of § 212(c), Petitioner is no longer eligible for that waiver because of that same conduct.

The fact that the consequence that § 212(c) can prevent (deportation) does not kick in until a petitioner is convicted does not make the conviction itself the only relevant event for the purposes of the retroactivity analysis. In *Vartelas v.*

*Holder*, 566 U.S. 257 (2012), the Supreme Court recognized that a newly amended immigration provision created new consequences for *multiple* past events—including the commission of an offense—thereby making such an application impermissibly retroactive. *See id.* at 261 (refusing to apply the version of a different immigration statute that became effective only after the petitioner committed and was convicted for his crime because doing so would "attach[] a new disability (denial of reentry) in respect to past events," specifically his "*offense*, plea, and conviction" (emphasis added)); *see also id.* at 272 ("That new disability rested not on any continuing criminal activity, but on a single crime *committed* years before [the statute's] enactment." (emphasis added)).[1]   And, in fact, AEDPA's

---

[1] Because *Vartelas* makes clear that a retroactive law can attach new consequences to multiple past events, I do not find the majority's appeal to *Lawrence v. Gonzales*, 446 F.3d 221 (1st Cir. 2006), and *Atkinson v. Attorney General*, 479 F.3d 222 (3d Cir. 2007), persuasive.   Indeed, those cases appear to presuppose that consequences can attach to one event only and that the relevant event is the conviction. *See Lawrence*, 446 F.3d at 225 (holding that "the date of the criminal conduct is irrelevant" under *St. Cyr*'s retroactivity analysis); *see also Atkinson*, 479 F.3d at 231 n.8 (holding that, for the purposes of the retroactivity analysis, "the relevant past event [is] the conviction [because] absent a legal determination of guilt, the alien is not subject to deportation or in need of [§] 212(c) relief").

Similarly, although the reasoning in *Kelava v. Gonzales*, 434 F.3d 1120 (9th Cir. 2006), would support the majority's position, I do not believe we are bound by that decision because it was abrogated by *Vartelas*. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).   *Kelava* held that to invoke the presumption against retroactive applications of law, the petitioner would have "to demonstrate reliance or any sort of 'settled expectations' on the existing immigration laws." 434 F.3d at 1125.   But *Vartelas* has since explicitly rejected the idea that reliance is "a necessary predicate for invoking the antiretroactivity principle."   566 U.S. at 273–74.   And *Cardenas-Delgado* reaffirmed

version of § 212(c) speaks of "having committed" an aggravated felony, not of conviction for an aggravated felony, which further suggests that the retroactivity analysis of AEDPA's amendment to § 212(c) should be concerned with the timing of the offense. *See Vartelas*, 566 U.S. at 272 (reviewing a provision that also used the language "committed an offense").

I believe that applying AEDPA's amendment to § 212(c) here would be impermissibly retroactive because Petitioner committed his offense before that amendment. *See Cardenas-Delgado*, 720 F.3d at 1119 (a statute is impermissibly retroactive if it "attaches new legal consequences to events completed before the enactment of the statute"). I would therefore hold that § 440(d)'s amendment does not apply here, and that Petitioner is therefore eligible for a § 212(c) waiver.

---

*Vartelas*'s holding in the context of § 212(c) waivers. *See* 720 F.3d at 1119 ("[A]fter *Vartelas*, it is clear that someone seeking to show that a civil statute is impermissibly retroactive is not required to prove any type of reliance and that the essential inquiry is whether the new statute attaches new legal consequences to events completed before the enactment of the statute."). For the same reason that I do not believe *Kelava* guides our decision here, I do not find the majority's appeal to *United States v. Zuniga-Guerrero*, 460 F.3d 733 (6th Cir. 2006), or to *Khan v. Ashcroft*, 352 F.3d 521 (2d Cir. 2003), persuasive, as both turned on the absence of reliance. *Compare Zuniga-Guerrero*, 460 F.3d at 737 ("[I]n fact, our sister circuits have uniformly noted 'the absurdity of arguing that one would not have committed a crime in the first place . . . if he had known he could not ask for a § 212(c) waiver.'" (quoting *Kelava*, 434 F.3d at 1125)), *and Khan*, 352 F.3d at 522–25 (similar), *with Vartelas*, 566 U.S. at 272 (rejecting as "doubly flawed" the reasoning that, because it would be "absurd" to suppose that a noncitizen committed a crime "in reliance on the immigration laws," a law is not retroactive).

Because the majority holds otherwise, I respectfully dissent.