Filed 4/3/24  P. v. Hernandez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>GONZALO HERNANDEZ,<br>        Defendant and Appellant. | E079739<br><br>(Super.Ct.Nos. FVA11276 &<br> SCR53635)<br><br> ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 11, 2024, be modified as follows:

1. On page 9, in the second full paragraph, at the end of the first sentence (which ends "is not credible"), add the following footnote:

"At oral argument and in his petition for rehearing, defendant argued that because the probation report was prepared weeks after defendant entered his plea, our analysis is erroneous because it "presumes that [defendant] was aware of the contents of the probation report at the time he entered his plea."  The argument fails because we do not presume that defendant was aware of the contents of the probation report when he entered his plea.  Rather, because of the contents of the probation report, which was provided to defendant's counsel, we conclude that defendant's testimony that he and his attorney never discussed immigration at all is not credible."

There is no change in the judgment.

1

The petition for rehearing is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.

Filed 3/11/24  P. v. Hernandez CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GONZALO HERNANDEZ,<br><br>Defendant and Appellant. | E079739<br><br>(Super.Ct.Nos. FVA11276 & SCR53635)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Martin Lijtmaer for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

In December 1990, defendant and appellant Gonzalo Hernandez was charged by felony complaint with conspiracy to sell cocaine and heroin (Pen. Code, § 182,

1

subd. (a)(1); unlabeled statutory citations refer to this code), and possession for sale of cocaine base (Health & Saf. Code, § 11351.5).  The following month, he pled guilty to the possession count under a plea agreement in exchange for the dismissal of the conspiracy count.

In 2022, defendant filed a motion under section 1473.7 to withdraw his plea and vacate his conviction, asserting that he did not meaningfully understand the immigration consequences of his plea when he entered it.  The trial court denied the motion.  Defendant appeals, arguing that he did not understand the immigration consequences of his plea and that his attorney failed to defend against those consequences by negotiating an immigration-safe disposition.  He further argues that both errors were prejudicial.  We reject all of defendant's arguments and therefore affirm.

## BACKGROUND

An undercover officer with the Fontana Police Department arranged to buy over $1,000 worth of cocaine and heroin from codefendant Jose Zamora.  The undercover officer met with Zamora and two other codefendants, Serafin Reyes and Javier Dominguez, and completed the transaction using prerecorded "buy money."  After the transaction was completed, Zamora, Reyes, and Dominguez left in a vehicle driven by defendant.  Police officers stopped the vehicle and found about half an ounce of cocaine in defendant's pocket.  They searched the vehicle and found the buy money and a loaded nine-millimeter handgun.

Defendant was charged with conspiracy to sell cocaine and heroin (§ 182, subd. (a)(1)) and possession for sale of cocaine base (Health & Saf. Code, § 11351.5).

2

The record reflects that the trial court advised him at arraignment that "if he [was] not a citizen, a conviction of the offense with which he [was] charged may lead to his deportation, exclusion from admission to this country, or denial of naturalization." He had the assistance of an interpreter for the hearing.

Pursuant to a plea agreement, defendant pled guilty to the possession count in exchange for dismissal of the conspiracy count. On the plea form, defendant initialed the box next to a statement acknowledging that if he was "not a citizen of the United States, [he] could be deported, or excluded from admission to the United States, or denied naturalization." He also initialed the box next to the following statement: "I have had sufficient consultation with my attorney, Robert J. Falkenthal, concerning my intent to plea [*sic*] guilty to the charge(s) against me. My lawyer has explained everything on this declaration to me, and I have had sufficient time to consider the meaning of each statement. I have placed my initials, G.H., in certain boxes on this declaration to signify that I understand and adopt as my own the statements which correspond to those boxes." Defendant initialed the box indicating that he "cannot read/understand English, but [he has] had the assistance of an interpreter to read this form to [him] and [he] now understand[s] all of the contents of this form." Defendant signed the plea form declaring the truth of his statements under penalty of perjury. The contents of the form were interpreted to defendant in person and in Spanish. Defendant's attorney declared that he "personally read and explained the contents" of the declaration to defendant and that he personally observed defendant sign the plea form and "counseled the defendant in the

3

matter of his pleading guilty." The court found that defendant had read and understood his declarations and the consequences of his guilty plea.

After considering the probation report, the court sentenced defendant to 270 days in county jail and three years of probation under several conditions, including the following: "1. Not remain in or enter the United States without proper authorization by the Department of Immigration and Naturalization Services. Upon entering the United States, report forthwith to the Probation Officer with proof of said authorization. If the defendant remains in the United States or enters the United States, [additional terms applied.]"

In 2021, defendant filed a motion to vacate his conviction under section 1473.7. The court conducted a hearing on the motion, and defendant was the only witness to testify. He said that he was born in Mexico and came to the United States illegally when he was 14 or 15 years old. He got married in 2000 and had two children, who were ages 18 and 20 at the time of the hearing. He testified that he was represented by a public defender for his controlled substance arrest, but he did not remember the attorney's name. Defendant met with the attorney three or four times, but they never talked about immigration consequences. Defendant stated that he would have rejected the plea offer had he known about the immigration consequences, because his mother and six siblings were here in the United States. He admitted that his signature and initials were on the change of plea form, but he did not recall signing it. Defendant stated that he was sad and nervous when he signed the form because he had never been prosecuted before and "just wanted the whole thing to be over." He said that he was deported in 1991 after he

4

served his sentence but returned to the United States about one month later, again without legal authorization.

The court denied the motion without prejudice. It noted that the only evidence that defendant presented was his own testimony. The court also noted that there was no testimony that his conviction was currently causing or had the potential to cause him adverse immigration consequences.

In 2022, defendant filed a second motion to vacate, supported by declarations from himself and Carolina Gomez, one of his new attorneys. The People opposed the motion.

The court held a hearing on the second motion and considered defendant's testimony from the hearing on the first motion. (The same judge heard both motions.) The court also heard testimony from Gomez, who said that defendant's conviction made him ineligible for lawful permanent residence. She explained that the conviction was an aggravated felony, a crime involving moral turpitude, and a violation of a law relating to a controlled substance, all of which made defendant removable. Gomez testified that defendant should have pled to a violation of Health and Safety Code section 11351 because that offense does not specify the controlled substance, and defendant could then have argued in immigration court that his conviction did not meet the federal standard. She stated that she sent plea counsel a letter before the hearing, and he replied that he did not recall defendant's case.

The court denied the motion to vacate. The court noted that defendant signed the change of plea form stating that he could be deported and that he had sufficient time to discuss the contents of the form with defense counsel. The court found that defendant's

5

testimony that he would not have pled guilty had he known the immigration consequences was uncorroborated. The court noted that it would not have made sense for defendant to go to trial, given that he faced a drug conspiracy charge and a drug possession charge, the cocaine base was found on his person, and the plea agreement led to the dismissal of the conspiracy charge. The court also noted that no effort was made to have defendant's plea counsel testify or at least provide his file.

DISCUSSION

Defendant argues that the trial court should have granted his motion, because he did not understand the immigration consequences of his plea, his plea counsel erred by failing to negotiate an immigration-safe plea, and both errors were prejudicial. We disagree on all three points.

A. *Legal Background*

Under section 1473.7, a person who is no longer in custody may petition to vacate a conviction or sentence "if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 quoting § 1473.7, subds. (a)(1) & (e)(1) (*Espinoza*).) "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).) "[A] petitioner's own subjective error qualifies for relief under the statute if the evidence shows he or she misunderstood the immigration consequences of a plea deal." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.)

6

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*People v. Vivar* (2021) 11 Cal.5th 510, 529-530 (*Vivar*).)

"A defendant must provide ""'objective evidence'"" to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321; see *Vivar*, *supra*, 11 Cal.5th at pp. 530-531.)

We independently review the denial of a motion to vacate under section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at p. 526.) In doing so, we afford "particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527-528.) However, if the facts derive entirely from written declarations and other documents, "there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide,

based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528, fn. omitted.)

B. *Defendant Failed to Establish His Own Misunderstanding of the Immigration Consequences of His Guilty Plea*

Defendant claims that he did not understand that his conviction would result in deportation or that he "would have no chance to return to the United States lawfully or obtain legal status here." In support of his claim, he asserts that his attorney never discussed potential immigration consequences with him and focused instead on only the criminal consequences.

The only evidence that defendant did not understand the immigration consequences of his plea was his declaration and testimony. But the trial court did not find defendant credible, and that adverse credibility determination is amply supported.

Defendant had entered the United States without legal authorization, so he was subject to removal even without a criminal conviction. The probation report stated that defendant and his codefendants were "illegal aliens" and would be "deported" when released from custody. The probation report also recommended the following probation condition: "Not remain in or enter the United States without proper authorization by the Department of Immigration and Naturalization Services. Upon entering the United States, report forthwith to the Probation Officer with proof of said authorization." The probation report was provided to defendant's attorney. By signing the plea form, defendant attested under penalty of perjury that his attorney had "explained everything" on the form to him, including the statement that if defendant was "not a citizen of the

8

United States," he "could be deported, or excluded from admission to the United States, or denied naturalization." And defendant's plea counsel likewise attested under penalty of perjury that he had "personally read and explained the contents" of the form to defendant.

Yet at the hearing on his first motion to vacate, defendant testified unequivocally that he and his attorney never talked about immigration at all: "Did you ever talk to him about or did you ever have a conversation with your public defender about the immigration consequences?" "No." "Did the topic of immigration or immigration consequences ever come up?" "No."

Given defendant's undocumented status, the probation report's statement that he would be deported, and the recommended probation condition that he not remain in or enter the United States without legal authorization, his testimony that his attorney never spoke with him about immigration at all is not credible. Moreover, his testimony contradicts his own sworn statements on the plea form, as well as those of his plea counsel. And because defendant's testimony and declaration are the only evidence of the error that he alleges, defendant's lack of credibility is fatal to his motion. The record contains no credible evidence that defendant did not understand the immigration consequences of his plea.

Defendant's arguments to the contrary are not persuasive. He argues that the facts described in his declaration and testimony corroborate his claim that he did not understand the immigration consequences of his plea. In particular, he points out that his "entire life was in the United States," he came to this country "when he was about 15

9

years-old and lived the bulk of his teenage years here," his mother and siblings were all here, and he had a landscaping job.  The argument is meritless, because none of those facts has any tendency to show that defendant did not understand the immigration consequences of his plea when he entered it.

Defendant also argues that his receipt of "the standard [section] 1016.5 immigration warnings" does not show that he understood the immigration consequences of his plea, because the advisement told him only that he *could* be deported, excluded, or denied naturalization, not that he *would* be.  The assertion is correct but, in this case, irrelevant.  The section 1016.5 advisement does not, by itself, show that defendant *did* fully understand the immigration consequences of his plea, but it was still defendant's burden to prove that he did *not* fully understand them.  Again, the only evidence of that was defendant's own declaration and testimony, and defendant was not credible.

For all of these reasons, we conclude on independent review that defendant did not carry his burden of establishing by a preponderance of the evidence that he did not understand the immigration consequence of his plea.

C. *Defendant Has Not Established That His Attorney "Failed to Defend Against the Immigration Consequences" of His Plea*  (Bold omitted.)

Defendant argues that his plea counsel erred by failing to negotiate an immigration-safe plea. He claims that immigration-safe alternatives were available.  The argument fails because the record contains no evidence to support it.  There is no evidence concerning plea counsel's efforts to negotiate a more immigration-safe plea or the prosecution's willingness to agree to such a deal.  Gomez testified that it would have

10

been "safer" to plead guilty to a violation of Health and Safety Code section 11351, but there is no evidence that plea counsel did not try to negotiate such a plea or that the prosecution was open to accepting such a proposal. And Hernandez cites no authority for the proposition that the immigration consequences of a conviction under Health and Safety Code section 11351 would have been more favorable. (See *Lopez v. Sessions* (9th Cir. 2018) 901 F.3d 1071, 1075.)

In addition, the record contains no evidence that the prosecution was willing to agree to an immigration-safe disposition or that plea counsel did not attempt to negotiate such a disposition. The lack of any such evidence is fatal to defendant's attempt to vacate his conviction on those grounds. (Cf. *People v. Perez* (2018) 19 Cal.App.5th 818, 830.) We therefore reject defendant's argument that his plea counsel did not adequately defendant against the immigration consequences of the charges.

D. *Defendant Has Not Established Prejudice*

Assuming for the sake of argument that defendant did not understand the immigration consequences of the plea or his plea counsel did not adequately defend against them, defendant still has not established prejudice.

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances." (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

11

In his declaration and testimony, defendant stated that he would not have pled guilty if he had known the immigration consequences of the plea, but defendant's declaration and testimony are not credible, for reasons already explained. Moreover, "'a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.'" (*People v. Bravo* (2021) 69 Cal.App.5th 1063, 1074.) Defendant's conduct before and after his plea shows that at that time he was not concerned about having legal authorization to enter or remain in the United States. He had entered and remained in the country without legal authorization, and after being deported when he was released from custody, he immediately reentered without legal authorization. There is no contemporaneous evidence that maintaining the ability to enter or remain in the United States legally was of any interest whatsoever to defendant when he pled guilty.

In addition, the evidence of defendant's guilt was overwhelming. An undercover police officer bought illegal drugs from the codefendants, and defendant was apprehended in a car with the codefendants, with cocaine in his pocket and the buy money in the car. The charges against defendant exposed him to a multiyear prison sentence, but under the plea deal he was sentenced to only 270 days in jail. Given that defendant was already in the United States illegally and reentered the country illegally shortly after he was deported, it is impossible to credit his assertion that, in the absence of his or his plea counsel's purported errors, he would have risked years in prison in order to

preserve his ability to reenter the United States legally sometime in the future.  Again, the record contains no credible evidence that entering the country legally was of any importance to him.

For all of these reasons, we conclude that defendant has not shown a reasonable probability that he would not have pled guilty in the absence of his or his plea counsel's purported errors.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____
J.

We concur:

RAMIREZ_____
P. J.

RAPHAEL_____
J.